**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA FIRST COAST CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS, <br><br> Plaintiffs <br> v. <br><br> WILLIAM F. CLARK, DIRECTOR, OFFICE OF GOVERNMENT-WIDE ACQUISITION POLICY, OFFICE OF ACQUISITION POLICY, OFFICE OF GOVERNMENT-WIDE POLICY, GENERAL SERVICES ADMINISTRATION, *et al.* <br><br> Defendants. | **Case No. 24-cv-318-WWB-MCR** |

**[PROPOSED] ORDER**
**GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Upon consideration of the Motion for Preliminary Injunction ("Motion") filed by Plaintiffs Associated Builders and Contractors Florida First Coast Chapter ("ABCFFC") and Associated Builders and Contractors ("ABC") (collectively "Plaintiffs"), the Court, pursuant to Federal Rule of Civil Procedure 65 and Local Rules 6.01 and 6.02 for the U.S. District Court, Middle District of Florida, hereby **GRANTS** Plaintiffs' Motion, as described more fully below:

1. On February 9, 2022, President Joseph R. Biden issued Executive Order 14063 (the "EO"), "Use of Project Labor Agreements for Federal Construction Projects." The EO requires contractors and subcontractors to negotiate or become parties to project labor agreements ("PLA") for federal construction contracts valued at $35 million or more.

1

The PLAs must prohibit strikes, lockouts, and other comparable job disruptions; include labor dispute resolution procedures; provide for labor-management cooperation on relevant issues; and otherwise comply with applicable law. Only senior agency procurement officials may grant exceptions to the requirement after finding a PLA would not advance the government's interest in economy and efficiency; would "substantially reduce" bidders "as to frustrate full and open competition"; or would otherwise be inconsistent with applicable law. (*See* EO 14063).

2.    On December 18, 2023, the Office of Management and Budget issued Guidance Memorandum M-24-06 ("OMB Memo"), which implemented the EO, purporting to provide guidance to agencies regarding exceptions to the PLA Rule and reporting, with the force and effect of law.

3.    On December 22, 2023, the Federal Acquisition Regulatory ("FAR") Council issued the Final Rule titled "Use of Project Labor Agreements for Federal Construction Projects" (PLA Rule), which implemented the EO. The PLA Rule took effect January 22, 2024. The PLA Rule requires federal contractors and subcontractors to enter PLAs as a condition of being awarded work on federal construction projects valued at more than $35 million, absent exception.

4.    Plaintiffs seek to enjoin William F. Clark, Christine J. Harada, John M. Tenaglia, Karla S. Jackson, Jeffrey A. Koses, and Shalanda Young (collectively "Defendants") from enforcing the EO, PLA Rule, and OMB Memo (collectively the "PLA Mandates") on the grounds they violate and/or conflict with the Federal Property and Administrative Services Act ("FPASA" or the "Procurement Act"), 40 U.S.C. § 121, *et seq.*; the Competition in Contracting Act ("CICA"), 41 U.S.C. § 3301; the National Labor

2

Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*; the First Amendment to the U.S. Constitution; the Office of Federal Procurement Policy ("OFPP") Act, 41 U.S.C § 1301, *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706; the Regulatory Flexibility Act ("RFA"), as amended by the Small Business Regulatory Enforcement Act ("SBREFA"), 5 U.S.C. § 601; and the Small Business Act ("SBA"), 15 U.S.C. § 644.

5.    Plaintiffs have standing to sue under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977) because (1) Plaintiffs' members, as identified through various affidavits presented to the Court, would otherwise have standing to sue in their own right; (2) the interests at stake are germane to Plaintiffs' organizational purposes of advocating for fair and open competition for construction work; and (3) neither the claims nor relief require the participation of Plaintiffs' individual members as Plaintiffs seek injunctive relief. *See also Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (finding standing of group members to challenge barriers erected by the government making it more difficult for the group's members to compete in the process of bidding for government contracts). In addition, Plaintiffs have shown harm to their own organizational interests resulting from the PLA Rule. *See Plaintiffs v. Kemp,* 2023 U.S. Dist. LEXIS 144918, at *55-56 (N.D. Ga. Aug. 18, 2023) (organization injured by diverting resources).

6.    The dispute is ripe for review as it raises pure questions of law and Plaintiffs are suffering hardship that will continue absent judicial relief. *See Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019).

7.    Venue is proper in this District under 28 U.S.C. § 1391(e) because ABCFFC maintains its principal place of business in this District and Plaintiffs identified numerous

3

ABCFFC members harmed by the PLA Rule. Alternatively, venue is established because facts and circumstances relating to the enforcement of the challenged PLA mandate are taking place on bid solicitations regarding Jacksonville federal projects.

8.    To obtain a preliminary injunction, a movant must demonstrate: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable injury; (3) the threatened injury outweighs any damage the injunctive order might cause the non-moving party; and (4) the order will not be adverse to public interest. *Georgia v. Biden*, 46 F.4th 1283, 1291 (11th Cir. 2022); *Sierra Club v. Norton*, 207 F. Supp. 2d 1310, 1317 (S.D. Ala. 2002).

9.    Considering the likelihood of success on the merits, "the most important preliminary-injunction criterion," "requires the court to consider the merits of plaintiffs' claim under the appropriate legal standard for review of that decision." *See Georgia*, 46 F.4th at 1301; *Sierra Club*, 207 F. Supp. 2d at 1318.  Based on the administrative record and the proofs of irreparable harm presented by Plaintiffs, it is likely Plaintiffs will succeed on each of their claims.

10.    First, Plaintiffs have shown they are likely to succeed on the merits of their claim that the PLA Mandate exceeds the Executive Branch's authority under the FPASA. The FPASA is designed "to provide the Federal Government with an economical and efficient system" for procurement activities. *See* 40 U.S.C. § 101; *Georgia*, 46 F.4th at 1298 (issuing an injunction against the President's imposition of a mandate on federal contractors not authorized by any specific reference in the FPASA.) Further, analysis under the major questions doctrine establishes that this case presents issues of "economic and political significance," and therefore the PLA mandate required "clear

4

congressional authorization." *See West Virginia v. EPA*, 142 S. Ct. 2587, 2595 (2022).

11.    Plaintiffs have also shown they are likely to succeed on the merits of their claim that the PLA Mandate violates the CICA, 41 U.S.C. § 3301, which requires federal agencies awarding contracts to "obtain full and open competition through ... competitive procedures." "[I]mposing more criteria than necessary works against the... oft-repeated priority of achieving 'full and open competition' in the procurement process." *Georgia,* 46 F.4th at 1297. The existence of potential exemptions to the PLA mandate compels no different result. Plaintiffs have shown that the exemption process is not functioning in a rational manner but instead is arbitrarily resulting in universal PLA mandates on covered projects, regardless of market research and proofs of improper injury to competition.

12.    Plaintiffs also have shown they are likely to succeed on the merits of their claim that the PLA Mandate violates the APA and OFPP. The APA, 5 U.S.C. § 706(2)(A), (D) directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found. . .  arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law," and "found to be...without observance of procedure required by law." Here, Defendants did not adequately explain why they imposed a nationwide PLA mandate; they offered explanations running counter to evidence, failed to consider important aspects of the problem, relied on factors Congress prohibited Defendants from considering, improperly relied on overly narrow exemptions to the PLA Mandate to justify it, and issued the OMB Memo without notice and comment in violation of the OFPP Act.

13.    Plaintiffs have also shown they are likely to succeed on the merits of their claim the PLA Mandate violates Plaintiffs' First Amendment Free Association rights. The government may not restrict First Amendment rights as "the price of maintaining eligibility

5

to perform government contracts." *See ABC of SE. Texas v. Rung*, No. 1:16-CV-425, 2016 WL 8188655, at *8 (E.D. Tex. Oct. 24, 2016); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *White v. Sch. Bd. of Hillsborough County*, 2009 U.S. App. LEXIS 1532, at *7 (11th Cir. Jan. 27, 2009). Union association is a type of protected expressive association under the First Amendment. *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463-66 (2018). The PLA Mandate here requires Plaintiffs' members to associate with unions—a type of expressive association—without any corresponding compelling state interest that cannot be achieved through means less restrictive of associational freedoms.

14.    Plaintiffs have shown they are likely to succeed on the merits of their claim the PLA Mandate conflicts with Section 8(d) of the NLRA. Under that provision, the government may not compel an employer or a union to execute a CBA or agree to any specific contract provision. *See H.K. Porter v. NLRB*, 397 U.S. 99, 102-109 (1970). That is exactly what the PLA Mandate does, in violation of the NLRA.

15.    Plaintiffs have further shown they are likely to succeed on the merits of their claim the PLA Mandate fails to comply with the RFA and SBA, in violation of the APA. The PLA Mandate, contrary to the SBA, reduces small business participation on federal contracts for or exceeding $35 million. Further, Defendants did not conduct a suitable final regulatory flexibility analysis under the RFA.

16.    In sum, based upon the Pleadings, Motions, Memoranda, Affidavits, and portions of the Administrative Record submitted to this Court, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims against Defendants**.**

17.    Plaintiffs provided notice of their Motion to Defendants and therefore need

not demonstrate notice is impractical.

18.    Plaintiffs have further shown they will suffer irreparable injury absent injunctive relief through costs associated with complying with the PLA mandate and through lost contract opportunities in the billions of dollars.

19.    In contrast, Defendants have not shown an injunction will harm them as they can still *encourage* PLAs and can seek contractual remedies against contractors for any delays or failures to perform awarded contracts if an injunction is in place.

20.    The public interest favors injunctive relief, as the public interest favors a competitive procurement process and protection against unlawful government actions.

21.    Nationwide injunctive relief is appropriate as to Plaintiffs' members on any federal construction project of more than $35 million, as to which Plaintiffs' members are eligible and qualified to perform such projects nationwide.

22.    Plaintiffs do not seek security under Federal Rule of Civil Procedure 65(c) and therefore the Court will not order security.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that the **DEFENDANTS** are hereby immediately enjoined and restrained from mandating PLAs on federal contracts valued at $35 million or more as follows:

1.    Defendants Clark, Koses, Tenaglia, Jackson, Harada, and Young are enjoined from implementing the EO anywhere in the United States against any potential offerors on federal contracts for or exceeding $35 million;

2.    Defendants Clark, Koses, Tenaglia, Jackson, and Harada are enjoined from implementing the PLA Rule anywhere in the United States against any potential offerors on federal contracts for or exceeding $35 million;

7

3.      Defendant Young is enjoined from implementing the OMB Memo anywhere in the United States against any potential offerors on federal contracts for or exceeding $35 million.

**SO ORDERED** this _____ day of _____ 2024.

_____
Wendy Berger, U.S. District Judge