# EXHIBIT "4"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **ASSOCIATED BUILDERS AND CONTRACTORS, FLORIDA FIRST COAST CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS,** | § § § § § | **NO. _____** |
| **Plaintiffs** | § § | |
| **vs.** | § § | |
| **WILLIAM F. CLARK, DIRECTOR, OFFICE OF GOVERNMENT-WIDE ACQUISITION POLICY, OFFICE OF ACQUISITION POLICY, Office of GOVERNMENT-WIDE Policy, GENERAL SERVICES ADMINISTRATION,  et al.** | § § § § § § § | |
| **Defendants.** | § § § | |

**AFFIDAVIT**

I, Matthew Ferguson, being duly sworn, hereby state the following based on personal knowledge:

1.      I am the Federal Market Leader of The Haskell Company.  My firm is an integrated Design Builder performing private and public works construction projects throughout the World.  Our public works construction is performed primarily in the United States.  My firm is a member of Associated Builders and Contractors ("ABC"), and ABC's Florida First Coast Chapter.

2.      I am familiar with my firm's performance of construction work on government projects that exceed $35 million in value. We have a strong success rate with winning these types of contracts. Each year, my firm typically performs work exceeding $50 million in revenue from projects of this magnitude.

1

3.      My firm self-performs some aspects of our work by using employees in various trades and classifications, including pipefitters, carpenters, laborers and others. As a general contractor we also subcontract out work in various trades. For example, within the last year, we have subcontracted with many different entities, including union and merit shop or nonunion, subcontractors.

4.      As a contractor performing Federal work, I am very concerned about the new Rule recently issued by the FAR Council. The Rule requires federal agencies to mandate project labor agreements ("PLAs") on federal construction projects that are $35 million or more in total value.

5.      My firm will face irreparable harm from the Rule as it will make it more difficult for my firm to secure work.  I am already aware of several upcoming projects—construction work at Marine Corp Support Facility Blount Island Command, FL, Fort Liberty, NC (several), Naval Base Kitsap Bremerton, Puget Sound Naval Shipyard, WA, —that have been advertised as requiring a PLA. My firm has had a strong success rate performing this type of work for these agencies and a documented track record of being the successful bidder in other similar projects. We would plan to pursue the work at each location if it were not for the PLA requirement.

6.      I am also aware of other upcoming projects now being bid by NAVFAC which have been announced as subject to the PLA mandate. One example is the $2B NAVFAC SE MACC program. Even though the FAR Rule allows exemption from the mandate where the agency's market research indicates that a PLA will injure competition on the IDIQ program, it is our understanding that NAVFAC has undertaken no market research to justify the PLA mandate on this project, and that no exemptions have been granted despite contractors, including our firm, informing NAVFAC that the PLA mandate will not result in improvements to efficiency and economy. The NAVFAC SE MACC Phase I solicitation had no less than 9 Requests For

Information submitted regarding the PLA requirement. Several of those RFI's had detailed information about how the inclusion of the PLA clause would decrease competition, reduce efficiencies, and increase prices. It is clear through NAVFAC's responses that filing for the well justified exception would not be considered.

7.      I believe it would be inefficient and costly for my firm to prepare bids for projects that require PLAs for many reasons. I understand that under the Rule, my firm would have to sign a PLA before we can submit a bid or after being awarded a contract. Either way, this would impose new and costly burdens on my firm during the bidding process. Federal projects are firm-fixed price leaving no ability to clarify or revise pricing after award. For this reason, we rely on the participation and competition or our subcontract trade partners when preparing our bids. Our experience shows that the majority of subcontractors submitting proposals in the areas that we perform work are non-union. Although we do not discriminate between union and non-union subcontractors, we depend on the non-union participation simply because they are in the majority. Haskell recently conducted a survey of our subcontract partners regarding their willingness to sign a PLA. 73% of the respondents to our survey replied "Not interested in bidding if there is a Government mandated PLA." With a reduction of subcontractor participation of that extreme, 73%, in an industry that is already suffering from lack of labor availability, the risk of failure is extreme. As a result, if we chose to submit on a Federal project with a PLA, then our price would be significantly increased to account for administrative burdens, lack of subcontractor competition and to account for inefficiencies in working with trade partners with which we do not regularly contract.

8.      Further, my firm does not have an ongoing relationship with any unions, particularly not in the Southeast region of the country where unions perform a small minority of

the work. In fact, my firm rarely if ever works with unions, and our employees have never voted to be represented by a union. Forcing our company to recognize and enter into a PLA with a union that does not represent our employees would infringe on our Constitutional right of freedom of association.

9.      The Rule would also make it more difficult if not impossible for my firm to identify subcontractors when bidding for applicable federal construction projects. If the Blount Island Project and NAVFAC SE MACC program we want to propose on are subjected to the PLA mandate, my firm would need to find subcontractors who are willing to enter PLAs. Most of our regular subcontractors have already made clear that they will not perform work under a PLA, and without them our firm cannot successfully perform the project. The lack of subcontractors willing to bid under the PLA mandate would be an insurmountable challenge for our firm, or at a minimum will drastically decrease the number of subcontractors my firm could consider, given that most subcontractors who my firm typically works with will not participate in a project with a PLA. The result will be unnecessarily increased costs and higher bid prices to the Government due to lack of competition between subcontractors.

10.     If my firm decided to pursue Federal projects with PLAs my firm would need to employ and train additional staff to comply with the new administrative burdens and compliance risks imposed by the new Rule at the bid stage. The additional staff will increase our project estimates resulting in higher prices to the Government.

11.     Imposing a PLA on projects such as those mentioned herein will do nothing to increase government efficiency or economy, and will instead have the opposite effect, by reducing competition and increasing prices. My firm is ready, willing and able to submit proposals for work on any of the projects mentioned above, and other federal projects that are being solicited; but the

4

PLA mandate will irreparably harm our ability to bid or perform work on these projects or any other project covered by the new FAR PLA rule.

12.    I declare under penalty of perjury that the foregoing is true and correct.

3.19.2024
Date