# EXHIBIT "5"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS, FLORIDA FIRST COAST CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS, <br><br> **Plaintiffs** <br><br> vs. <br><br> WILLIAM F. CLARK, DIRECTOR, OFFICE OF GOVERNMENT-WIDE ACQUISITION POLICY, OFFICE OF ACQUISITION POLICY, Office of GOVERNMENT-WIDE Policy, GENERAL SERVICES ADMINISTRATION, et al. <br><br> **Defendants.** | § § § § § § § § § § § § § § § § § § § NO. _____ |

**AFFIDAVIT**

I, <u>Brian Murray</u>, being duly sworn, hereby state the following based on personal knowledge:

1. I am a Vice President / Division Manager responsible for conducting federal contract work for Brasfield & Gorrie, L.L.C. ("B&G"). I have been in the construction industry for thirty-five years, having worked for B&G for the past fourteen years dedicated to federal contract delivery. During my tenure with B&G we have secured over $2 billion in federal contract awards, providing employment for over 100 persons and federal government contracting is one of our core business market sectors for the past twelve years.

2. B&G is a general contractor concentrating on construction projects predominantly in the Southwestern and Southeastern parts of the United States. For the past thirty years, B&G is consistently ranked by Engineering News Record ("ENR") as one the largest construction firms (Top

1

25 by contract volume) in the United States, and we are currently ranked No. 1 in the Southeast and the State of Florida by ENR Southeast.

3. Our firm is a member of Associated Builders and Contractors ("ABC"), ABC's Florida First Coast Chapter, and other chapters. This Affidavit is submitted to express the negative impact that the New PLA Rules (hereinafter defined) will have on B&G's ability to continue to competitively bid for federal contract work subject to the New PLA Rules.

4. I am familiar with B&G's performance of construction work on federal government projects. Examples of federal construction projects B&G has been contracted to complete in recent history include, but are not limited to, the following:

| PROJECT | CONTRACT VALUE | CONTRACT # | Executive Agency | Location |
|---|---|---|---|---|
| Laredo 1 & 2 Land Ports of Entry | 101,000,000 | GS07P15HHC7001 | GSA | Laredo, TX |
| US Courthouse Greenville | 87,000,000 | 47PE0317C0004 | GSA | Greenville, SC |
| US Courthouse San Antonio | 131,000,000 | 47PH0818C0002 | GSA | San Antonio, TX |
| Hebert Federal Building Repairs and Modernization | 59,500,000 | 47PH0819C0001 | GSA | New Orleans, LA |
| US Courthouse Charlotte | 143,091,000 | 47PE0318C0004 | GSA | Charlotte, NC |
| US Courthouse Wilmington Disaster Recovery and Modernization | 37,414,047 | 47PD0121C0005 | GSA | Wilmington, NC |
| US Courthouse Savannah | 95,588,495 | 47PF0021C0017 | GSA | Savannah, GA |
| US Courthouse Aberdeen | 26,770,000 | 47PH0821D0004 / 47PH0821F0033 | GSA | Aberdeen, MS |
| Federal Motor Carrier Safety Administration Inspection Facilities, Southern Border Program | 40,719,050 | 47PH0821D0004 / 47PH0821F0030, GS07P03HHD0159_4740 / GSP0715HH5019 | GSA | Del Rio and Brownsville, Laredo, El Paso, TX |
| US Courthouse Huntsville | 90,000,000 | 47PE0321C0003 | GSA | Huntsville, AL |
| US Courthouse Fort Lauderdale | 201,000,000 | 47PE0323C0004 | GSA | Fort Lauderdale, FL |
| Wallace Creek Marine Corps Barracks, Camp Lejeune | 88,395,478 | N4008511C4001 | NAVFAC | Jacksonville, NC |
| Orlando VA Medical Center | $543,693,474 | VA101CFMC0163, VA101CFMC0164, VA101CFMC0206 | VA | Orlando, FL |
| US Coast Guard Buffalo Station | $31,445,678 | 70Z04721RNMACC03 / 70Z04723FPCNI0001 | DHS | Buffalo, NY |
| Specialty Warehouse | $35,110,000 | 15F06719D0003691 / 15F06722F0001529 | DOJ | Huntsville, AL |
| Technology Facility 2 and 3 | $397,000,000 | 15F06719D0003691 / 15F06723F0000010 | DOJ | Huntsville, AL |

5. B&G self-performs portions of the work by using its own employees in various trades and classifications potentially subject to a project labor agreement, including carpenters, laborers,

2

equipment technicians, equipment operators, truck drivers, foreperson(s) and others. As a general contractor, we also subcontract out work in various trades, including electrical, mechanical, plumbing, fire protection, plaster and drywall, and painting.

6. B&G currently holds five multiple award contracts (IDIQ, MATOC, MAC) and we are actively pursuing other contracts via full and open competition. There are presently potential pending awards for projects including the following: the Brownsville (Gateway) Land Port of Entry (GSA), Auburn University, USDA ARS Lab (Army), NAVFAC Southeast Multiple Award Contract (Navy) and Anniston Army Depot ANAD (Army) (collectively, the "Upcoming Projects"). Each of these Upcoming Projects is subject to the recent amendments to the Federal Acquisition Regulations in FAR Case 2022-003 "Use of Project Labor Agreements for Federal Construction Projects" (the "New PLA Rules").

7. B&G is also a mentor to an 8(a), HUBZone small business in the U.S. Small Business Administration Mentor-Protégé program, Jordan Construction. Jordan Construction and B&G are currently completing an $85 million laboratory project at the University of Alabama for the Department of Interior, Geological Survey Administration. The Auburn University, USDA ARS Lab (Army) project is a key element of our protégé's business plan for 2024. Jordan Construction is a merit shop contractor that has no experience with PLAs.

8. B&G typically spends one to two years planning for specific pursuits and then four to six months and hundreds of man-hours on each bid or proposal we submit. The process is time-consuming and costly because of the great importance to B&G and the procuring agencies that we submit correct, competitive bids and proposals.

9. As we prepare to make proposals for these Upcoming Projects, B&G is being informed by our potential subcontractors they will not participate in preparing bids because of the New PLA

Rules, the uncertainty of labor cost created by the New PLA Rules, and the impact an agreement with a union would have on their companies and business operations.

10. B&G is also being informed that reaching agreement on a PLA may not be possible on these Upcoming Projects for a variety of reasons. I understand that under the New PLA Rules, agencies have three options when they require submission of a fully negotiated and signed PLA: (1) submission of the PLA with the bid or proposal, (2) submission of the PLA after responses are received but before contract award, or (3) after contract award. When a signed PLA is required with the bid or proposal and the Federal government is not a party to the PLA, that means the incumbent unions must negotiate and sign a PLA with every general contractor and subcontractor who wants to respond to the solicitation. There is no requirement that the incumbent unions do so, and no requirement that the incumbent unions treat all contractors the same. There is no requirement that the unions complete negotiations before bids or proposals are due. If B&G must submit a signed PLA after the bid or proposal is submitted but before contract award, there is no reliable way we can predict how negotiations with a union will play out, and this uncertainty must be reflected by a contingency in our bid/proposal pricing. If the PLA is required after the contract is awarded, the unions have significant negotiation advantage, because any failure to reach agreement on a PLA would necessitate a termination of the contract, presumably for default. The procuring agencies cannot avoid a termination by excepting the contract from the PLA requirement. As a result, B&G will not be able to confidently submit bids/proposals and will be forced to include significant contingency sums to account for the uncertainties that union contractors and subcontractors do not face.

11. B&G has submitted many questions to the contracting officers on the Upcoming Projects asking about the market condition information that might justify an exception to the New PLA Rules. In each case, the contracting officers have refused to either produce, share and/or

acknowledge the market research they are supposed to examine under the New PLA Rules, which likely substantiates a basis for exception(s) under the New PLA Rules.

12. After research and investigation, it is my understanding that under many PLAs, non-union companies such as B&G must obtain most or all their employees from union hiring halls and will not be able to use their existing non-union workforce. Under some PLAs, a non-union contractor is permitted to use a small number of its existing non-union workforce, but they must send these employees to the union hiring hall and negotiate the ability to have the union dispatch these employees to the jobsite. Either way, obtaining most of the craft workers from union hiring halls, rather than using existing employees, would make it difficult for B&G and its non-union subcontractors to successfully bid for work and perform contracts.

13. I further understand that PLAs typically require contractors to follow union work rules, such as those requiring work assignments by union craft jurisdictional boundaries defined in each craft's relevant collective bargaining agreement. That arrangement is different from the work arrangement that my firm typically employs. Usually, we achieve significant labor cost savings through multiskilling, in which workers possess a range of skills that are appropriate for more than one work process and are used flexibly across multiple trades on a project or within an organization, which again we believe contributes to the overall growth and development of our employees.

14. I understand that PLAs also typically require non-union companies to obtain apprentices exclusively from union apprenticeship programs on PLA projects. This would create another challenge for B&G, which typically uses apprentices from non-union apprenticeship programs provided by ABC chapters or our own Department of Labor approved apprenticeship program. B&G does not want to stop working with our current apprentices. Plus, it would be costly and time

prohibitive for my firm to stop using our current apprentices and to switch to using entirely different apprentices, as we have already invested time in our current apprentices' training.

15. I understand that PLAs typically require non-union companies to pay their workers' health and welfare benefits to union trust funds. However, B&G already has employee benefit plans, which means that any additional payments to union trust funds would increase the cost of B&G's bid on the Upcoming Projects.

16. If B&G decides to bid on the Upcoming Projects, B&G would need to employ and train additional staff to comply with the new administrative burdens and compliance risks imposed by the New PLA Rules at the bid stage. The cost of this new staff would have to be reflected in the price of the bid.

17. I declare under penalty of perjury that the foregoing is true and correct.

By _____
Brian Murray
Vice President /
Division Manager
Brasfield & Gorrie, LLC

Date __March 25, 2024_____