# EXHIBIT "6"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS, FLORIDA FIRST COAST CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS,<br><br>**Plaintiffs**<br><br>vs.<br><br>WILLIAM F. CLARK, DIRECTOR, OFFICE OF GOVERNMENT-WIDE ACQUISITION POLICY, OFFICE OF ACQUISITION POLICY, Office of GOVERNMENT-WIDE Policy, GENERAL SERVICES ADMINISTRATION,  et al.<br><br>**Defendants.** | § § § § § § § § § § § § § § § § § §  NO. _____ |

**AFFIDAVIT**

I, Justin Starnes, being duly sworn, hereby state the following based on personal knowledge:

1. I am the Regional Vice President of the Southeast Region of Hensel Phelps Construction Co.  My firm is a public works contractor concentrating on construction projects throughout the United States.  The Southeast Region concentrates on construction projects in Florida, the Carolinas, Tennessee, Mississippi and Alabama. My firm is a member of Associated Builders and Contractors ("ABC"), and ABC's  Florida First Coast Chapter.

2. I am familiar with my firm's performance of construction work on government projects that exceed $35 million in value in the Southeast Region. We have a strong success rate

1

with winning these types of contracts. Each year, the Southeast Region typically wins contracts on 4 such projects.

3. My region self-performs some aspects of our work by using employees in various trades and classifications, including carpenters, laborers, masons, cement finishers, operators and others. As a general contractor we also subcontract out work in various trades. For example, within the last year, we have subcontracted with many different entities, many of whom were merit shop, or nonunion, subcontractors.

4. As a merit shop contractor, I am very concerned about the new Rule recently issued by the FAR Council. The Rule requires federal agencies to mandate project labor agreements ("PLAs") on federal construction projects that are $35 million or more in total value.

5. My region will face irreparable harm from the Rule as it will make it more difficult for the Southeast Region to secure work. I am already aware of one upcoming project—construction work at the USDA Lab Annex at Auburn University—that has been advertised as requiring a PLA. My region has had a documented track record of being the successful bidder in other similar projects. We would plan to pursue the work at the USDA Lab project if it were not for the PLA requirement. Additionally, I am aware of the upcoming JAX NAVFAC project that has been advertised as requiring a PLA. We would plan to pursue that project if it were not for the PLA requirement.

6. I am also aware of other upcoming projects at Patrick Space Force Base which have been announced as subject to the PLA mandate. We would plan to pursue these projects at Patrick Space Force Base if it were not for the PLA requirements.

7. Submitting bids for Federal contracts is a time-consuming process. For example, the Southeast Region typically spends approximately 700 hours on each bid we submit. The

process is time-consuming because we want to make sure we are submitting correct bids. Given that submitting bids is a time-consuming and costly process, my region does not have the capacity to submit bids when doing so will be futile.

8. I believe it would be futile for my firm to submit bids in the Southeast Region for projects that require PLAs for many reasons. I understand that under the Rule, my firm would have to sign a PLA before we can submit a bid or after being awarded a contract. Either way, this would impose irreparable burdens on my firm during the bidding process. If the Southeast Region had to submit a PLA to bid, we would not be able to meaningfully estimate how the PLA would impact our cost calculations, given that this region does not typically enter into PLAs nor do we work exclusively with union subcontractors. As a result, we would be unable to confidently submit an accurate bid.

9. Even if the Southeast Region did not need to sign a PLA until after my firm won the contract, we would still be unable to submit an accurate bid, knowing that a subsequent (and unnegotiated) PLA could alter the cost calculations. Under this scenario, my firm would have a minimal negotiating position in negotiating a PLA. Again, because of this challenge, the bid submission process would be futile.

10. Further, the Southeast Region does not have an ongoing relationship with any unions, particularly not in the southeast region of the country where union craft workers perform little if any work. In fact, the Southeast Region does not self-perform work with union craft labor, and rarely works with union subcontractors. Our employees have never voted to be represented by a union. Forcing our company to recognize and enter into a PLA with a union that does not represent our employees would irreparably infringe on our Constitutional right of freedom of association.

11. I understand that under typical PLAs, nonunion companies, such as mine, must obtain most or all their employees from union hiring halls and may not be able to use their existing nonunion workforce. Under some other PLAs, a nonunion contractor is permitted to use a small number of its existing nonunion workforce, but they must send these employees to the union hiring hall and hope the union dispatches the same workers back to the PLA jobsite. Either way, obtaining employees from union hiring halls, rather than using existing employees, would make it difficult for my region to successfully bid for work.

12. I further understand that PLAs typically require contractors to follow union work rules, such as those requiring work assignments by union craft jurisdictional boundaries defined in each craft's relevant collective bargaining agreement. That arrangement is different from the work arrangement that the Southeast Region typically employs. Usually, we achieve significant labor cost savings through multiskilling, in which workers possess a range of skills that are appropriate for more than one work process and are used flexibly across multiple trades on a project or within an organization.

13. I understand that PLAs also typically require nonunion companies to obtain apprentices exclusively from union apprenticeship programs on PLA projects. This would create another challenge for the Southeast Region, which typically uses apprentices from non-union apprenticeship programs provided by ABC chapters. My region does not want to stop working with our current apprentices. Plus, it would be costly for my region to stop using our current apprentices, and switch to using entirely different apprentices, as we have already invested time in our current apprentices' training.

14. Working on projects with PLAs would also make it more difficult for my region to retain employees. As noted above, our employees in the Southeast Region have never voted to be

represented by a union and many of my employees appear to have philosophical objections to union representation. Working on projects with PLAs would also increase my firm's costs relating to employee benefit payments. I understand that PLAs require nonunion companies to pay their workers' health and welfare benefits to union trust funds. However, my firm already has employee benefit plans. My region's employees would not be able to obtain union benefits unless they leave my firm. As noted above, I do not want my employees to leave my firm. To ensure that my employees do not leave (which again, is already a challenge in this labor market), my firm would need to pay into union trust funds while still maintaining current employee benefit plans.

15. The FAR Council and OMB, in publishing the PLA mandate, assert that the rule does not mandate PLAs containing all of the foregoing requirements. But nothing in the Rule prevents unions from insisting on these common provisions found in most PLAs, and the burden is on the contractor/bidder – not the union(s) - to negotiate the PLA in order to qualify for the work. This is an irreparable burden on our bidding for work on any project subject to the new PLA mandate.

16. The Rule would also make it more difficult if not impossible for my region to identify subcontractors when bidding for applicable federal construction projects. If the project I want to bid on is subjected to the PLA mandate, my region would need to find subcontractors who are willing to enter PLAs. Many of our regular subcontractors have already made clear that they will not perform work under a union PLA, and without them my region cannot successfully perform the project. The non-union subcontractors in turn cannot estimate their own costs without knowing what sort of PLA will be negotiated with the Union or accepted by the government agency. The lack of subcontractors willing to bid under the PLA mandate would be an insurmountable challenge for the Southeast Region, or at a minimum will drastically decrease the

number of subcontractors my region could consider, given that many subcontractors who the Southeast Region typically works with are merit shop.

17. The Rule will also likely have the unintended consequence of reducing participation of small and disadvantaged subcontractors on federal projects. Federal construction projects all have small business and disadvantaged business goals as part of the contract requirements. Many small business and disadvantaged business subcontractors in this region are nonunion subcontractors and do not have the structure or financial wherewithal to replace their nonunion craft workers with union craft workers and comply with the paperwork and fringe benefit requirements of a PLA.

18. If my region decided to bid for federal projects mandating PLAs, despite the futility in doing so, my region would need to employ and train additional (un-reimbursable) staff to comply with the new administrative burdens and compliance risks imposed by the new Rule at the bid stage.

19. Imposing a PLA on the USDA Lab project will do nothing to increase government efficiency or economy, and will instead have the opposite effect, by reducing competition and increasing prices. My region is ready, willing and able to bid for work on the USDA Lab project, and other federal projects that are being advertised for bids; but the PLA mandate will irreparably harm our ability to bid or perform work on this project or any other project covered by the new FAR Council PLA rule.

20. I declare under penalty of perjury that the foregoing is true and correct.

_Justin Starnes_
Digitally signed by Justin Starnes
Date: 2024.03.21 14:03:20-04'00'

_____
Date