# EXHIBIT "7"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS, FLORIDA FIRST COAST CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS, <br><br>Plaintiffs <br><br>vs. <br><br>WILLIAM F. CLARK, DIRECTOR, OFFICE OF GOVERNMENT-WIDE ACQUISITION POLICY, OFFICE OF ACQUISITION POLICY, Office of GOVERNMENT-WIDE Policy, GENERAL SERVICES ADMINISTRATION, et al. <br><br>Defendants. | § § § § § § § § § § § § § § § § § § NO. _____ |

## AFFIDAVIT

I, Michael Bennett, being duly sworn, hereby state the following based on personal knowledge:

1. I am the Vice President of The Cianbro Companies. Cianbro is one of the United States' largest 100% employee-owned construction and construction services companies. We presently operate in more than 40 states and employ more than 4,000 team members. Cianbro manages and self-performs all elements of construction. We are a longtime member of Associated Builders and Contractors ("ABC") and Cianbro through its subsidiary R.C. Stevens, is a member of the Florida First Coast Chapter.

2. We have bid on and been awarded five government projects since 2020 each of which exceeded $35 million in value. We successfully performed the projects (some are still

active) without any project labor agreement ("PLA") requirement, and we would expect to continue providing such services to the government but for the PLA mandate. Imposing a PLA mandate will significantly impact our company, by disqualifying us from having an opportunity to secure work on federal projects. We need policies that are inclusive and encourage all qualified contractors and their skilled workforce to compete to build long-lasting quality projects throughout America.

3. As a merit shop contractor, we are very concerned about the new Rule recently issued by the FAR Council. The Rule requires federal agencies to mandate project labor agreements on federal construction projects that are $35 million or more in total value.

4. We believe in open, fair, and competitive bidding on public works projects. PLAs drive up costs of construction by 12% to 20% by reducing competition and effectively excluding merit shop contractors and their skilled team members from building projects paid for by their own tax dollars.

5. While the FAR PLA rule claims that it does not mandate specific working conditions as the outcome of PLA negotiations, the PLA mandate itself gives labor organizations all the leverage to insist on agreements that are antithetical to non-union contractors, including the following typical PLA provisions:

- Recognize unions as the unelected representatives of all employees on projects covered by the PLA.
- Use the union hiring hall to obtain most or all of their construction workforce.
- Obtain apprentices exclusively from union apprenticeship programs.
- Pay into union benefit plans.
- Obey costly, restrictive, and inefficient union work rules.

6. PLA mandates are not in alignment with our values, infringe on our freedom of association, and do not make sense for our organization. We hire and develop our own team members, we employ multiskilled tradespeople that can perform work across multiple disciplines, and we provide a competitive benefits package to our people.

7. It's important to note that we are not ani-union, we simply believe in inclusivity and that all contractors should have the right to be awarded work opportunities regardless of whether they agree to be bound by an agreement with unions that do not represent the contractors' employees. With all the construction needs that our great country is faced with, everyone needs to have a seat at the table. Especially where close to 90% of the construction workforce does not belong to a union and the industry as a whole is faced with a skilled labor shortage of close to half a million people.

8. I declare under penalty of perjury that the foregoing is true and correct.

DocuSigned by:
Mike Bennett
7312DE42D5ED454...

3/19/2024
Date

3