# EXHIBIT "11"



October 18, 2022

VIA ELECTRONIC SUBMISSION

Re: <u>Comments on FAR CASE 2022-003, Mandatory Project Labor Agreement for Federal Construction Projects of $35 million or more</u>.

Dear Regulatory Secretariat:

On August 19, 2022, the Federal Acquisition Regulatory Council (FAR Council) issued a proposed regulation to implement project labor agreements in federal construction contracts. This letter constitutes the Office of Advocacy's (Advocacy) public comments in response to the proposed regulation. Advocacy encourages the FAR Council to reevaluate the excessive cost of compliance of this mandatory rule on small entities. Advocacy also encourages the FAR Council to explore alternatives to this rulemaking as it relates to small entities as is required by the Regulatory Flexibility Act (RFA).

## I. Background

### A. The Office of Advocacy

Congress established the Office of Advocacy under Pub. L. 94-305 to represent the views of small entities before federal agencies and Congress. Advocacy is an independent office within the U.S. Small Business Administration (SBA). As such, the views expressed by Advocacy do not necessarily reflect the views of the SBA or the Administration. The RFA,[1] as amended by the Small Business Regulatory Enforcement Fairness Act (SBREFA),[2] gives small entities a voice in the rulemaking process. For all rules that are expected to have a significant economic impact on a substantial number of small entities, the RFA requires federal agencies to assess the impact of the proposed rule on small entities and to consider less burdensome alternatives.

---

[1] 5 U.S.C. §601 et seq.

[2] Pub. L. 104-121, Title II, 110 Stat. 857 (1996) (codified in various sections of 5 U.S.C. §601 et seq.).



The Small Business Jobs Act of 2010 requires federal agencies to give every appropriate consideration to comments provided by Advocacy.[3] The promulgating agency must include a response to these written comments in any explanation or discussion accompanying the final rule's publication in the *Federal Register*, unless the agency certifies that the public interest is not served by doing so.[4]

Advocacy's comments are consistent with Congressional intent underlying the RFA, that "[w]hen adopting regulations to protect the health, safety, and economic welfare of the nation, federal agencies should seek to achieve statutory goals as effectively and efficiently as possible without imposing unnecessary burdens on the public."[5]

### B. The Proposed Rule

The Department of Defense, General Services Administration, and National Aeronautics and Space Administration are proposing to amend the FAR to implement Executive Order 14063, *Use of Project Labor Agreements for Federal Construction Projects*. The Executive Order was issued on February 9, 2022.[6] It mandates that federal government agencies require the use of project labor agreements (PLAs) where the total estimated cost to the government is $35 million or more. The rule provides three exceptions to this requirement. The first is when the PLA would not achieve economy and efficiency in federal procurement as described in 22.50(d) of the FAR. The second is when the PLA would substantially reduce the number of potential bidders, frustrating full and open competition. The third is when the PLA would be inconsistent with statues, regulations, and other Executive Orders or Presidential Memoranda.

The mandatory requirement of this rule means that every contractor on a federal construction project, regardless of how small, must agree to negotiate or become a party to a project labor agreement with one or more labor organizations. This creates a mandatory flow down requiring all affected small businesses to join a union, regardless of size or dollar value of the sub-contract. This flow down will have a detrimental cost impact on those covered small entities.

### II. Advocacy's Small Business Concerns

### C. Advocacy Roundtable

On September 29, 2022, Advocacy conducted a roundtable discussion on the proposed rule. Approximately 60 small businesses participated. The participants included a mixture of small business construction owners, small business construction trade organizations, and organizations that were in support of PLAs. The Associated Builders Contractors (ABC) presented findings

---

[3] Small Business Jobs Act of 2010 (PL. 111-240) §1601.

[4] *Id*.

[5] *Id.*

[6] Executive Order, Use of Project Labor Agreements for Federal Construction Projects (February 04, 2022).

from a survey of its members.[7] According to the ABC, nearly all the small business member respondents said they would be less likely to bid on contracts if the proposed rule was finalized. This potential effect would greatly hamper federal small business goals. One federal construction contractor said she would not be able to participate in PLAs because of the compliance costs. Another contractor spoke about the proposal's estimation that only two small businesses per construction project would be impacted. They argued this estimate was entirely too low and unrealistic considering the nature of a construction project. Several other individuals spoke in support of PLAs, suggesting that the regulation would accomplish its objective of increasing efficiency in contract management. Others expressed a desire to return to the PLA requirements in place under the Obama Administration in which participation was not mandatory.

### D. Advocacy Recommendations

In the RFA section of the proposed rule, the FAR Council stated that the rule will not conflict with any other law, regulation, or Presidential Memoranda. However, this proposed rule would seem to conflict with the December 2, 2021 presidential announcement on reforms to Increase Equity and Level the Playing field for Underserved Small Business Owners.[8] In this announcement, President Biden proposed increasing the number of new entrants to the federal marketplace, thereby reversing declines in the small business supplier base. According to a report cited by the President, the number of new small business entrants to the federal procurement process decreased by 60 percent over the past decade. A previously cited ABC survey indicates the majority of small businesses in the construction industry are not unionized. This rule will require all affected small businesses to be unionized in order to have PLA contracts and subcontracts. This mandatory requirement places an additional cost on small businesses that cannot absorb them. Thus, the regulation will have the unintended consequence of preventing President Biden's goal of increasing small entrants to the federal contracting market.

Additionally, many of the small business attendees at the roundtable stated that they would not participate in PLA contracts, an expectation reflected in the ABC survey. This would indicate that the pool of small businesses ready and willing to participate in PLA contracts is tiny. This will have a chilling impact on federal agencies ability to meet their annual small business contracting goals. Therefore, counter to the regulation's assertion, there appear to be inherent conflicts between this proposed rule and other federal laws and Presidential Memoranda.

The proposed rule suggests that there are no alternatives to the regulation that would reduce its impacts on covered small entities. This prevented the public from reviewing and commenting on

---

[7] ABC SURVEY, https://www.abc.org/NEWS.

[8] Press Release, The White House, Statements and Releases, FACT SHEET: Biden-Harris Administration Announces Reforms to Increase Equity and Level the Playing Field for Underserved Small Business Owners, (Dec. 2, 2021), FACT SHEET: Biden-Harris Administration Announces Reforms to Increase Equity and Level the Playing Field for Underserved Small Business Owners | The White House.

alternatives that would allow the FAR Council to meet its statutory goals while simultaneously reducing the costs of the regulation on small entities. Pursuant to its consultation with affected small businesses, Advocacy recommends that the FAR Council consider and analyze the following alternative approaches to this regulation:

1. The rule's estimate of two affected small business subcontractors per $35 million project is too low. This number needs to be increased to reflect the characteristics of the construction industry. In arriving at this number, the FAR Council said it used information from experts, but it could have consulted with small businesses in the construction industry to get a more accurate number. The FAR Council should revise the number after taking comment from small businesses and their industry organizations. A more accurate estimate will likely reflect a greater negative economic impact on small businesses.
2. The FAR Council should consider modifying this proposed rule because of the diminishing cost-benefit to small firms. A dollar threshold could have been provided for the mandatory flow down cut-off. This threshold number could have been achieved by examining the average dollar value of subcontracts awarded to small businesses. If the mandatory flow down remains unchanged, this rule will have a higher negative economic impact on small specialty companies with few employees. If a proper cost-benefit analysis had been performed for this rule, it may have shown that a small firm that has only a few contracts per year will absorb a higher cost of compliance than a firm with multiple yearly contracts. Thus, this rule will have a negative economic impact on a substantial number of smaller firms, demonstrating why the mandatory flow down cut off has merit.
3. The FAR Council should consider a requirement that a small business does not have to join a union if it agrees to pay the prevailing wages and other benefits established in union negotiation. The mandatory requirement of joining a union means a small business must pay union dues and other expenses that are not returned once the contract is completed. The removal of this mandatory requirement would allow the federal government to achieve its objective with the PLA but at less cost to the small business. This change should provide the small business with additional cash flow to be competitive in the marketplace.
4. The FAR Council places requirements on the small business subcontractor to comply with this mandatory flow but it does not provide the small business with an opportunity to utilize the resources of the contracting agency if pay and other disputes should occur during contract performance.
5. The FAR Council should carefully examine which industries are construction and exempt those that are not directly involved in the construction industry. For example, professional service companies are governed by other statutes such as the Brooks Act.

### III.     Conclusion

The Office of Advocacy encourages the FAR Council to re-evaluate the impact of this regulation on small entities and federal agencies. As proposed, this regulation will conflict with the Administration's goal to reduce economic barriers for small businesses that wish to enter the federal marketplace. If this regulation is finalized, it will place a greater burden on federal

agencies to meet their annual statutorily required small business goals. My office would be happy to assist in any way to ensure that the goal of the regulation is fulfilled with minimum negative economic impact on small businesses. I can be contacted at major.clark@sba.gov.

        Sincerely,

        *Major L. Clark, III*

        Major L. Clark, III
        Deputy Chief Counsel
        Office of Advocacy
        U.S. Small Business Administration

Copy to:    Dominic Mancini, Deputy Administrator
              Office of Information and Regulatory Affairs
              Office of Management and Budget