# EXHIBIT "12"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS, FLORIDA FIRST COAST CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS, § § § § § § § | NO. 24-cv-318-WWB |
| **Plaintiffs** § | |
| vs. § § | |
| WILLIAM F. CLARK, DIRECTOR, OFFICE OF GOVERNMENT-WIDE ACQUISITION POLICY, OFFICE OF ACQUISITION POLICY, Office of GOVERNMENT-WIDE Policy, GENERAL SERVICES ADMINISTRATION, et al. § § § § § § § § | |
| **Defendants.** § § § | |

## AFFIDAVIT

I, James C. McReady, III, being duly sworn, hereby state the following based on personal knowledge:

1. I am the President/CEO of JCM Associates, Inc. My firm provides mechanical services throughout the Washington DC Metropolitan area and in other mid-Atlantic states. We perform new construction and renovation, among other services, on large scale commercial and public construction projects. Our services have included construction of public works projects exceeding $35M, including most recently Camp LeJeune P378 CH-53K Maintenace Hanger (NC), Camp LeJeune P707 BEQ (NC), MCS Cherry Point P197 Aircraft Maintenance Hanger (NC), Camp LeJeune 20P1800/1801 Package (NC), among others. My firm is a member of Associated Builders and Contractors ("ABC"), and ABC's Metropolitan Washington Chapter.

1

2.    As a merit shop subcontractor, I have entered into a collective bargaining agreement (CBA) with the International Union of Journeymen and Allied Trades (IUJAT). Under that CBA, my company is contractually obligated to deal exclusively with the IUJAT and apply the terms of the CBA to all JCM employees performing covered work, including both private and public projects. I am very concerned about the new Rule recently issued by the FAR Council. The Rule for the first time requires federal agencies to mandate project labor agreements ("PLAs") on federal construction projects that are $35 million or more in total value.

3.    Of particular concern, the Rule calls for prime contractors to agree to be bound by a single PLA on each covered project and requires all subcontractors to be bound to the same agreement. All the prime contractors I know of who have signed PLAs on federal contracts have entered into agreements with the North American Building Trades Unions (NABTU). The IUJAT is not affiliated with the NABTU. Therefore, my firm will be excluded from performing work on any PLA-mandated project over $35M.

4.    I am aware of a number of projects throughout the mid-Atlantic states where the mandate is being imposed, including Bureau of Engraving and Printing (MD), and Joint Base Andrews P207 Hanger 14 Renovation (MD), even though the mandate excludes my firm and others who have agreements with independent unions from performing the work. My firm has had a strong success rate at similar federal installations and a documented track record of being a successful subcontractor in other similar projects. But for the PLA requirement, we would pursue the work with general contractors we regularly subcontract to; but because of the PLA mandate, we will not be able to perform the work. This will cause us irreparable harm.

5.    Even though the FAR Rule and Office of Management and Budget (OMB) guidance make reference to exemptions from the mandate where the agency's market research

2

indicates that a PLA will injure competition on federal construction projects, it is my understanding that the federal agencies have either undertaken no meaningful market research to justify the PLA mandate on covered projects, or have ignored the results of such research. The result is that on covered projects we would normally pursue, there are a dramatically reduced number of bidders for the prime contracts and subcontracts on projects imposing the PLA mandates and lack of available unionized firms to fill the workforce needs.

6. The FAR Council and OMB, in publishing the PLA mandate, assert that the PLA Rule does not mandate PLAs with any particular union. But the requirement that a single agreement cover all the trades will inevitably lead the prime contractors our firm bids with to agree to a PLA with NABTU, which will exclude our firm form competing for the work. This is an irreparable burden on our subcontracting on any project subject to the new PLA mandate. Further, as subcontractor, my firm would not be involved in negotiations for the PLA, so my firm would be required to adhere to whatever deal the general contractor reaches with a union.

7. Imposing a PLA on federal construction projects will do nothing to increase government efficiency or economy, and will instead have the opposite effect, by reducing competition and increasing prices. In fact, in recent experience, we have observed NABTU competitors being very distracted by the Data Center market and not actively pursuing many government projects. JCM has won (6) Federal Government projects in the past (4) years where we are aware of no NABTU mechanical subcontractors showing interest and/or submitting a proposal. My firm is ready, willing and able to serve as a subcontractor for such projects, but the PLA mandate will irreparably harm our ability to perform work on such projects or be selected as a subcontractor in the first place.

8. I declare under penalty of perjury that the foregoing is true and correct.

_____      4-23-24
Name                                                                    Date