IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA FIRST COAST CHAPTER, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>WILLIAM F. CLARK, *et al.*,<br><br>Defendants. | **Case No. 24-cv-318-WWB-MCR** |

### REPLY SUPPORTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to this Court's Order (Doc. 29), Plaintiffs submit this reply supporting their Motion for Preliminary Injunction ("Motion").

### I. ARGUMENT

#### A. Defendants' Opposition Departs From Controlling Precedent

1. *The EO, PLA Rule, and OMB Memo Exceed the Authority of the Executive Branch Under FPASA*

Plaintiffs' Motion demonstrated the PLA mandate is an impermissible *ultra vires* action by the President, the FAR Council and OMB, properly relying on the Eleventh Circuit's decision affirming an injunction issued against a very similar government contractor mandate in *Georgia v. Biden*, 46 F.4th 1283 (11th Cir. 2022). (Mot. 14-16). In response, Defendants contend *Georgia* does not control because Judge Edmondson concurred only in the result. (Opp. 8). But Judge Edmondson explained he "easily believe[d] plaintiffs ha[d] a reasonable chance to succeed on the merits;" and the sole issue on the merits before the appeals court was whether the Federal Procurement Act ("FPASA") authorized the President's action. Judges

1

Edmondson and Grant joined to affirm the district court's injunction to that same effect. Thus, the Eleventh Circuit's decision constitutes binding precedent in this Court. *See Georgia*, 46 F.4th at 1289, 1308 *affirming* 574 F. Supp. 3d 1337 (S.D. Ga. 2021).

In any event, contrary to Defendants' claim (Opp. 8), Judge Grant's opinion is not "inconsistent" with FPASA precedent. Judge Grant relied on *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), and based her interpretation, in part, on the directive that presidential authority under the FPASA must "be based on a 'specific reference' within [FPASA]." *See Georgia*, 46 F.4th at 1294 (quoting *Chrysler*, 441 U.S. at 304 n.34). Defendants do not address *Chrysler*, much less distinguish the case.[1]

Defendants assert the FPASA provides presidents with broad authority but rely primarily on distinguishable cases from outside this Circuit.[2] (Opp. 4-5). For example, Defendants cite *AFL-CIO v. Kahn*, 618 F.2d 784, 789 (D.C. Cir. 1979) (en banc) (Opp. 4), where the D.C. Circuit held the FPASA allowed the President to require contractors to comply with wage and price standards; but the D.C. Circuit "wish[ed] to emphasize" it found a "nexus between...wage and price standards and likely savings to the Government" and its "decision today [did] not write a blank check for the President to fill at his will." *Id.* at 785, 793. In contrast, the PLA mandate's requirements go far beyond "wage and price" standards, distinguishing this case from *Kahn*, as well as *Bradford v. DOL*, 2024 WL 1866432 (10th Cir. Apr. 30, 2024), on which Defendants also rely (Opp. 4), where the 10th Circuit upheld President Biden's $15 minimum wage for

---

[1] Defendants point only to general provisions discussing government contracting powers, but no specific language authorizing PLA mandates. (Opp. 9). There is none.
[2] Defendants cite *Farkas v. Tex. Instrument, Inc.*, 375 F.2d 629, 632 n.1 (5th Cir. 1967) (Opp. 4 n.1), which is dicta. *Georgia*, 46 F.4th at 1300 n.11.

government contractors.[3]

The other cases Defendants cite to say FPASA provides broad authority to presidents (Opp. 4 n.1-2) are similarly inapposite. *Mayes v. Biden*, 67 F.4th 921, 941 (9th Cir. 2023), *vacated as moot*, 89 F.4th 1186 (9th Cir. 2023), "has no legal force." *See Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015). In *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 914 (10th Cir. 2004), the party challenging an executive order "[did] not argue [the executive order went] beyond the scope of authority Congress delegated." *Id.* at 914 n.8. Plaintiffs also cite *UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003), and *Chamber of Com. of U.S. v. Napolitano*, 648 F. Supp. 2d 726 (D. Md. 2009), two cases which rely heavily on *Kahn*. *See Chao*, 325 F.3d at 366-67; *Napolitano*, 648 F. Supp. 2d at 735-38. But this Circuit "disagree[s]" with the "purpose-based approach" of *Kahn* and its progeny, "detached as it is from [FPASA's] remaining text and structure." *See Georgia*, 46 F.4th at 1300.

2.   *The EO, PLA Rule, and OMB Memo Violate CICA*

In their Motion, Plaintiffs argued CICA requires full and open competition in federal contracting, and the PLA mandate plainly contravenes that goal. (Mot. 16-17). Defendants rely on *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1293 (Fed. Cir. 2020), to contend agencies can anticipate only certain entities can meet the needs of a solicitation.[4] (Opp. 13). But *Oracle* is inapposite; there the Federal Circuit concluded a

---

[3] Defendants wrongly claim the PLA mandate applies a "longstanding understanding of FPASA" (Opp. 5). As Plaintiffs have noted, no president has previously issued a PLA mandate. (Mot. 9).

[4] Defendants contend commenters submitted research showing no statistically significant difference in bids between PLA and non-PLA projects (Opp. 13) but Defendants cited only one such study, relating to only one type of construction in only

solicitation requirement could exclude "offerors who could not meet the agency's minimum needs." *See Oracle*, 975 F.3d at 1292-93. But the PLA mandate has nothing to do with agency minimum needs. This case is like *National Government Services v. United States*, 923 F.3d 977 (Fed. Cir. 2019), where an agency's solicitation did not provide full and open competition when a solicitation requirement "effectively exclude[d] offerors" and was "not based on some capability or experience requirement." *Id.* at 986; *see also Georgia*, 46 F.4th at 1294 (mandate violated full and open competition).

### 3. The PLA Rule, EO, and OMB Memo Violate Plaintiffs' First Amendment Free Association Rights

Plaintiffs' Motion asserted the PLA mandate violates Plaintiffs' First Amendment Free Association protections by requiring expressive association with unions. (Mot. 21-22). Defendants contend the PLA mandate involves non-expressive commercial decisions (Opp. 15-16), citing inapposite free speech cases *Arkansas Times LP v. Waldrip*, 37 F.4th 1386, 1394 (8th Cir. 2022), and *Rust v. Sullivan*, 500 U.S. 173 (1991). But Plaintiffs do not argue the PLA mandate restricts their free speech rights; Plaintiffs present only a free association challenge. (Mot. 21-22).

The free association cases Defendants cite—*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 70 (2006), and *Christian Labor Ass'n v. City of Duluth*, No. 21-227, 2023 WL 3996240, at *10 (D. Minn. June 14, 2023)—are no more persuasive. (Opp. 16). In *Rumsfeld*, the Supreme Court rejected a free association challenge relating to the presence of military recruiters on law school campuses. *See Rumsfeld*, 547 U.S. at 69. But the relationship between a union and an employer under

---

one state. *See* 88 Fed. Reg. 88709. Numerous contrary studies were cited in ABC's comments opposing the PLA Rule, ignored by Defendants. (Doc. 18-2, pp. 22-23)).

a PLA is far more intrusive, requiring mutual agreement to various terms of employment (*see* Mot. 10). Thus, while the Minnesota district court in *Christian Labor* applied *Rumsfeld* (and other inapposite Eighth Circuit precedent) to reject a free association challenge to a provision in a project labor agreement, it was wrong to do so. *See Christian Labor*, 2023 WL 3996240, at *10.

    e. *The PLA Rule, EO, and OMB Memo Violate Section 8(d) of the NLRA.*

In their Motion, Plaintiffs explained how the PLA mandate violates Section 8(d) of the NLRA by requiring employers to enter into labor agreements with specific terms. (Mot. 22). Defendants contend *Bldg. & Const. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./RI* ("*Boston Harbor*"), 507 U.S. 218 (1993), allows the government to require PLAs. (Opp. 16). But the Supreme Court expressly declined to address the impact of Section 8(d) in *Boston Harbor* (Mot. 22 n.22), and *Boston Harbor* dealt only with a single project, not an across-the-board mandate. (507 U.S. at 218). Defendants further cite *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985) (Opp. 16), but that case dealt only with "state laws of general application," *see Massachusetts*, 471 U.S. at 753, nothing like the PLA mandate.

  **B.** **Plaintiffs Have Shown They Will Suffer Irreparable Harm Absent Immediate Injunctive Relief**

In their Motion, Plaintiffs explained they will suffer irreparable harm absent expedited injunctive relief, and they are already suffering monetary losses they cannot recover due to lost contract opportunities imposed by the PLA Rule. (Mot. 23-24). *See Georgia*, 46 F.4th at 1302. Defendants contend Plaintiffs "assume, without proof" agencies will not apply exceptions to the PLA mandate, citing *AGC v. FAR Council*,

2024 WL 1078260 (W.D. La. Mar. 12, 2024).[5] (Opp. 18). To the contrary, unlike the speculative concerns advanced in the *AGC* case, Plaintiffs have submitted undisputed proof (sworn statements) showing PLAs are being mandated *without exception* both in the Jacksonville area and throughout the country, despite compelling evidence of injury to competition. (Mot. 5-6; Doc. 18-6 – 18-17).[6]

Notably, Defendants have not pointed to any pending projects allowing an exception under the PLA Rule, and the public website created to identify such exceptional projects remains *empty*. The judge in *AGC* was not aware of these facts because they had not yet occurred. But in the present record, there is now undisputed proof the PLA Rule is operating as an unlawful across-the-board mandate. And the situation is getting worse each day, as the PLA is being applied to more projects and erecting more barriers to fair and open competition.[7]

Defendants disingenuously fault Plaintiffs for waiting until after the PLA Rule took effect to file their suit, citing *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016) (Opp. 20). Having previously faulted AGC for filing too early, *i.e.*, when they could

---

[5] In *AGC*, the district court accepted at face value the exemption process described in the PLA Rule and found the individual plaintiffs' concerns over the exemption process "speculative," because those plaintiffs could not identify any projects requiring a PLA, for which they were qualified, and no exemptions had then been sought or denied. 2024 WL 1078260, at *5.

[6] Defendants also cite *AGC* to argue Plaintiffs' subcontractor members have not suffered irreparable harm, ignoring the *AGC* plaintiffs had never performed on the large construction projects the PLA mandate covers. (Opp. 19-20). But Plaintiffs represent many subcontractors who have worked on large-scale construction projects covered by the PLA Rule and have identified specific subcontractor members as examples of many they represent. (Mot. 7; Doc. 18-10 – 18-17).

[7] Contrary to Defendants opposition (at 19), Plaintiffs are not confined to individual bid protests in order to challenge systemic barriers to competition for government contracts. *See NE FL Chapter of AGC v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

only "speculate" as to irreparable harm, Defendants can hardly claim Plaintiffs have filed too late, when there is undisputed proof the so-called exceptions from the PLA Mandate have proved to be a dead letter. *See Gegas v. St. Matthew's Univ. School of Medicine*, 2023 WL 6294410 (M.D. Fla. Sept. 4, 2023) (distinguishing *Wreal* and finding plaintiff showed irreparable harm despite delay).

## II.   CONCLUSION

Absent expedited injunctive relief, per the undisputed record, the PLA Rule will continue to deprive Plaintiffs' member contractors of their ability to fairly compete for billions of dollars' worth of government construction contracts. This act of political favoritism is causing irreparable injury to Plaintiffs' members and is plainly undermining full and open competition, government efficiency and economy, all without any statutory authority. Plaintiffs request the Court to grant their Motion for Preliminary Injunction.

Respectfully submitted,

*/s/Kimberly J. Doud*
Kimberly J. Doud
LITTLER MENDELSON, P.C.
111 N Orange Ave., Suite 1750
Orlando, FL 32801
407-393-2951
kdoud@littler.com

Maurice Baskin (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W., Ste. 400
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 12th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court by using the ECF system, which will send a notice electronically to Defendants' counsel of record.

*/s/Kimberly J. Doud*
Kimberly J. Doud