**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA FIRST COAST CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS, <br><br>      Plaintiffs <br><br> v. <br><br> WILLIAM F. CLARK, DIRECTOR, OFFICE OF GOVERNMENT-WIDE ACQUISITION POLICY, OFFICE OF ACQUISITION POLICY, OFFICE OF GOVERNMENT-WIDE POLICY, GENERAL SERVICES ADMINISTRATION, *et al.* <br><br>      Defendants. | **Case No. 24-cv-318-WWB-MCR** |

**PLAINTIFFS' MOTION FOR EXPEDITED SUMMARY JUDGMENT AND**
**PRELIMINARY INJUNCTION, AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs Associated Builders and Contractors Florida First Coast Chapter ("ABCFFC") and Associated Builders and Contractors ("ABC" or "ABC National") (collectively "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 56, by and through their undersigned attorneys, move for summary judgment against the Federal Acquisition Regulatory ("FAR") Council Defendants, William F. Clark, Christine J. Harada, John M. Tenaglia, Karla S. Jackson, Jeffrey A. Koses, and Shalanda Young ("Defendants"). Plaintiffs have previously moved – and hereby seek to expedite consideration of their motion – to preliminarily enjoin the implementation and enforcement of Executive Order 14063 (the "EO"), "Use of Project Labor Agreements for Federal Construction Projects," 87 Fed. Reg. 7363 (Feb. 9, 2022); as implemented by the Final Rule having the same

1

title, promulgated by the FAR Council, 88 Fed. Reg. 88708 (Dec. 22, 2023) (the "PLA Rule"), and by the Office of Management and Budget's ("OMB") Guidance Memorandum M-24-06 ("Memo"). In addition to the continuing urgent need for the preliminary injunction, Plaintiffs now seek expedited summary judgment on the merits to set aside and vacate the above cited unlawful orders on a permanent basis.

As explained in Plaintiffs' pending motion for preliminary injunction, the PLA Mandate is an *ultra vires* action that exceeds the Executive Branch's authority under and/or directly conflicts with the Federal Property and Administrative Services Act ("FPASA"), 40 U.S.C. § 121, *et seq.*, Competition in Contracting Act ("CICA"), 41 U.S.C. § 3301, National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(d), and First Amendment. The PLA Rule further violates the Office of Federal Procurement Policy ("OFPP") Act, 41 U.S.C § 1301, *et seq.*, Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, Regulatory Flexibility Act ("RFA"), as amended by the Small Business Regulatory Enforcement Act ("SBREFA"), 5 U.S.C. § 601, and the Small Business Act ("SBA"), 15 U.S.C. § 644. For these reasons, and as further explained below, the PLA Mandate is unlawful and summary judgment should be granted to vacate it in its entirety.

## MEMORANDUM OF LAW

### I.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    No President in American history had issued an order mandating union PLAs as a condition of awarding work on federal construction projects, until President Biden issued EO 14063 on February 4, 2022. (ABC Rulemaking Comments, ECF 18-2).[1]

---

[1] The ABC Comments can also be found in the Administrative Record: *see* ABC_FAR Council_Federal_Acquisition_Regulation_Use_of_Project_Labor_Agreements_for_Federal Construction Projects_101822.pdf

2.     In 2009, former President Obama issued Executive Order 13502, "encouraging" – but not mandating – PLAs on federal projects above $25 million. Between fiscal years 2009 and 2024 (under Presidents Obama and Trump), just 12 federal contracts valued at $1.26 billion contained a government-mandated PLA, out of 3,222 contracts of $25 million or more valued at a total of $238 billion., This means that federal procurement officials overwhelmingly saw no benefit or need to impose PLAs on more than 1 percent of applicable federal construction contracts. (*See* Brubeck 1st Aff., ECF No. 18-16, Ex. 14 to PI Mot. ¶ 15; and ABC Comments at 18). During this period ABC members won and successfully performed a majority of the $238 billion in total value of direct prime construction contracts exceeding $25 million awarded by federal agencies during fiscal years 2009 to 2023. (Brubeck 2d Aff., attached to this Motion; *see also* Brubeck's previous affidavit at ECF No. 18-16, Ex. 14 to PI Mot. ¶ 15; and ABC's Comments).

3.     Notwithstanding the foregoing undisputed evidence that federally mandated PLAs were found not to be needed for purposes of economy or efficiency on 99 percent of covered federal projects over the previous decade(s), President Biden issued EO 14063 mandating PLAs on all federal construction projects above $35 million.  (AR, EO 14063, §§ 2-4).

4.     On December 18, 2023, OMB issued—without notice and comment—the OMB Memo, purporting to provide guidance to agencies regarding exceptions to the PLA Rule. (*See* OMB Memo, ECF No. 18-5, Ex. 3 to PI Mot.). The OMB Memo acknowledged PLAs could create "unintended barriers to entry" but nevertheless expanded the Rule's PLA requirements. (*Id.* at 4-5).

5.    On December 22, 2023, following notice and public comment (including opposing comments filed by ABC and others), the FAR Council published the final PLA Rule. (AR, 88 Fed. Reg. 88708). The PLA Rule requires contractors and subcontractors to enter into PLAs as a condition of being awarded work on federal construction projects valued at more than $35 million, absent extremely narrow (and ultimately phantom) exceptions. (*See id.* at 88709).

6.    ABC conducted a survey of its contractor members about government-mandated PLAs and the proposed version of the PLA Rule: 99 percent of respondents said they would be less likely to begin or continue bidding on federal contracts if the proposed rule was finalized; and 97 percent said government-mandated PLAs decrease economy and efficiency in government contracting.[2]

7.    97 percent of respondents "who self-identified as small businesses said they would be less likely to bid on contracts if the rule is finalized" and "73 percent of small businesses stated PLAs decrease hiring of minority, women, veteran and disadvantaged business enterprises." (ABC Comments at 37; *see also* SBA Comments, at 2-3).[3]

8.    Just 11 percent of the U.S. construction industry is unionized nationally, according to the government's own Bureaus of Labor Statistics; fewer in this District.[4] There is also an ongoing skilled labor shortage in the construction industry of more than

---

[2]    *See* https://www.abc.org/News-Media/Newsline/survey-97-of-abc-contractors-say-bidens-government-mandated-project-labor-agreement-policies-would-make-federal-construction-more-expensive (last visited Aug. 31, 2024). In their Answer, Defendants did not deny the accuracy of ABC's survey. (Ans. ¶ 45).

[3]    SBA's Comments are part of the administrative record, available at https://www.regulations.gov/comment/FAR-2022-0003-8301; AR 363-67.

[4]    *See* Industries at a Glance: Construction: NAICS 23 : U.S. Bureau of Labor Statistics (bls.gov) (last visited Sep. 8, 2024).

500,000 in the combined union and non-union sectors.[5] Restricting government procurement access to more than 90 percent of the workers in the industry during a period of such a shortage of workers is the antithesis of economy and efficiency.

9.     Numerous identified ABC members, representative of many more members locally and nationally, have provided sworn, undisputed evidence of irreparable injury to themselves and to the federal procurement process – including substantial impairment of competition, economy and efficiency in the bidding and award of government construction contracts under the PLA Mandate.[6] The declarants include members of both ABCFFC who are based in and/or seeking to perform work in Jacksonville and/or members of ABC nationally who have successfully performed large federal construction projects throughout the country.[7] The declarants include contractors large and small, as well as both prime contractors and subcontractors.[8] The declarants are mostly nonunion but include union[9] signatory contractors as well. All of the declarants have successfully performed work on projects exceeding $35 million and many have identified work for

---

[5] *See* https://www.abc.org/News-Media/News-Releases/abc-2024-construction-workforce-shortage-tops-half-a-million.

[6] *See* Affidavits filed at ECF No. 18- 2-13, further detailed below.

[7] (Haskell Co. Aff., ECF No. 18-6, Ex. 4 to PI Mot.); (Brasfield & Gorrie Aff., ECF No. 18-7, Ex. 5 to PI Mot.); (Hensel Phelps Aff., ECF No. 18-8, Ex. 6 to PI Mot.); (Cianbro Aff., ECF No. 18-9, Ex. 7 to PI Mot,); (American Electrical Aff., ECF No. 18-10, Ex. 8 to PI Mot.); (M.C. Dean Aff., ECF No. 18-11, Ex. 9 to PI Mot.); (Interstate Sealant, ECF No. 18-12, Ex. 10 to PI Mot.); (JCM Aff., ECF No. 18-14, Ex. 12 to PI Mot.); (ECC Aff., , ECF No. 18-15, Ex. 13 to PI Mot.); (*See also* Ex. 2 to this Motion, Robins & Morton Grp. Aff.)

[8] (Haskell Aff. ¶¶ 1-2) (general contractor); (Robins & Morton Aff. ¶¶ 1-2) (general contractor); (Brasfield & Gorrie Aff. ¶¶ 1-2) (general contractor); (Hensel Phelps Aff. ¶¶ 1-2) (general contractor); (Cianbro Aff. ¶¶ 1-2) (general contractor); (American-Electrical Aff. ¶ 1) (subcontractor); (M.C. Dean Aff. ¶¶ 1-2) (subcontractor); (Interstate Sealant Aff., ¶¶ 1-2) (small contractor/subcontractor).

[9] (JCM Aff. ¶ 2) (union subcontractor).

which they are qualified that is now being solicited by the federal government under the PLA Rule.[10]

10.    While Plaintiffs' motion for preliminary injunction has been pending, ABC has been monitoring the Defendants' procurement website (http://sam.gov) and has identified at least 64 federal projects subject to PLA mandates resulting from the challenged PLA Rule. (Brubeck 2nd Aff.¶ 2). According to the Defendants' own website, confirmed by ABC, no federal agency has to date exempted any covered project from the PLA mandate. *Id*; *See also* Project Labor Agreements (PLA) | Acquisition Gateway.

11.    The PLA mandate continues to irreparably harm ABC and ABCFFC member contractors, as they are unable to bid on and be awarded work without a PLA in place. (Brubeck 2nd Aff. ¶ 4). In addition, ABC has compiled substantial evidence of greatly reduced numbers of bidders, delayed procurements, and higher bid prices on federal construction projects resulting from the PLA Rule. (*Id.* at ¶¶ 8-13)[11]

12.    Multiple bid protests have been filed against bid solicitations mandating PLAs. The bid protests have been consolidated before the Court of Federal Claims. *See MVL USA Inc. v. USA*, Case No. 24-cv-01057 (filed Jul. 12, 2024).[12] The resulting delays

---

[10] (Haskell ¶¶ 2, 5); (Brasfield &Gorrie ¶¶ 4, 6); (Hensel Phelps ¶¶ 2, 5); (Cianbro ¶ 2); (American-Electrical ¶¶ 2, 4); (M.C. Dean ¶¶ 2, 3); (Interstate-Sealant ¶ 2); (JCM ¶¶ 1, 4); (ECC ¶¶ 2, 5); (Robins & Morton ¶¶ 3, 5-6).

[11]    Citing example of a large project on which only one out of six short listed (qualified) bidders was able to bid due to the PLA mandate. Also citing testimony before the House Oversight Committee on June 27, 2024. Cutting Competition in Contracting: The Administration's Pricey Project Labor Agreement Mandate (youtube.com), and evidence received from federal procurement officials.

[12] The filings in these cases have been sealed under rules of the Court of Federal Claims. On information and belief, however, the focus of these cases is on individual solicitations. Plaintiffs here challenge the PLA Mandate in its entirety.

to the procurement process further contradict Defendants' claim to promoting increased economy and efficiency under the PLA Rule.

## II.    STANDING AND STANDARD OF REVIEW

As previously demonstrated in their motion for preliminary injunction, ABCFFC and ABC are trade associations representing federal contractors in this District and nationwide, who have standing to bring this action on behalf of their members under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).[13] Specifically, Plaintiffs conclusively meet the following *Hunt* criteria: (1) Plaintiffs' members would otherwise have standing to sue in their own right; (2) the interests at stake are germane to Plaintiffs' organizational purposes; and (3) neither the claims nor relief require the participation of Plaintiffs' individual members.

As to the first criterion, ABCFFC and ABC have identified numerous members who have standing to sue. (*See* SOF ¶¶ 8-12, and the affidavits of representative ABC members cited therein, fully complying with *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009). Sworn declarations have been submitted by ABC member contractors and subcontractors – both union and non-union - who have successfully performed projects above $35 million but who are now irreparably harmed in their ability to compete for

---

[13] *See also America's Health Ins. Plans v. Hudges*, 742 F.3d 1319, 1326 n.5, 1327-28 (11th Cir. 2014) (trade association had standing to challenge law on behalf of its members); *ABC of SE. Texas v. Rung*, No. 1:16-CV-425, 2016 WL 8188655, at *6 (E.D. Tex. Oct. 24, 2016) (ABC had standing to challenge certain FAR regulations and guidance threatening injury to the association's government contractor members); *see also Am. Sec. Ass'n v. U.S. Dept. of Labor*, 2023 U.S. Dist. LEXIS 24076 (M.D. Fla. Feb. 13, 2023) ("little question" of standing where association members are the "objects of the [challenged] regulation").

specifically identified work due to the PLA Mandate.[14]  It is undisputed that the PLA Rule makes it impossible for ABC and ABCFFC members to compete on equal footing with unionized contractors. *See Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (group members have standing to challenge barriers erected by the government making it more difficult for them to compete for government contracts).

Although the PLA Rule purports to recognize certain exemptions, ABC's members and staff have found – and Defendants' own website confirms – that no exemptions have been granted in the nine months since the PLA Rule went into effect. Thus, the supposed exemptions have proved to be nonexistent. (*E.g.*, Brubeck 1st Aff. ¶¶ 12-14; Haskell Aff.¶ 6; Hensel Phelps Aff.¶ 5; American Electrical Aff. ¶ 5; M.C. Dean Aff. ¶ 3).[15] ABC submits that the drastic expansion of PLA mandates regardless of union market share is the inevitable result of the restrictive terms of the EO, Rule, and OMB Memo. (Brubeck 2nd Aff.). But regardless of the reason, the Defendants' imposition of the PLA mandate across the board, with or without the hollow exemptions, is itself directly injuring Plaintiffs' members.

---

[14] "Courts routinely rely on extra-record evidence to support standing in APA cases." *Texas v. Biden*, 2021 U.S. Dist. LEXIS 195393 (N.D. TX 2021), citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-54 (2010).

[15] This fact distinguishes the case of *AGC v. FAR Council*, 2024 WL 1078260 (W.D. LA. Mar. 12, 2024), on which Defendants relied in their previous Opposition to Preliminary Injunction. The Plaintiffs in that case offered no proof of injury and no plaintiffs who had performed qualifying projects. And prior to implementation of the Rule, the judge had no evidence before him that the government would not allow any exemptions to PLAs. Now there is ample proof that the Rule has eviscerated the fair and open competition requirements of federal procurement laws to the detriment of ABC's members and the public.

Plaintiffs also meet the second requirement for associational standing, as the present action is clearly germane to each association's organizational purposes of advocating for fair and open competition for construction work, including federal construction contracts (Brubeck 1st Aff. ¶ 8; Hoffman Aff., Ex. 15 to PI Mot., ECF. No. 18-17 ¶¶ 3, 6; Brubeck 2d Aff.); (*see also* ABC Comments at 1-2).[16] Finally, Plaintiffs meet the third *Hunt* criterion, *i.e*., that individual members need not participate as plaintiffs, because the Complaint seeks only injunctive relief based on the administrative record.[17]

Plaintiffs further have organizational standing to sue on their own behalf because the PLA Mandate is directly and currently harming their organizational interests by requiring ABC and ABCFFC to divert their attention away from other activities, such as management training, workforce development, and jobsite safety. (Brubeck 1st Aff. ¶ 5; Hoffman Aff. ¶ 9); *see Plaintiffs v. Kemp,* 2023 U.S. Dist. LEXIS 144918, at *55-56 (N.D. Ga. Aug. 18, 2023) (organization injured by diverting resources).

The dispute is ripe for review as it raises pure questions of law and Plaintiffs are suffering hardship that will continue absent judicial relief. *See Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019). Venue is proper under 28 U.S.C. § 1391(e) because Plaintiff ABCFFC maintains its principal place of business in this District and because facts and circumstances relating to the enforcement of the challenged PLA Mandate are taking place in this District, directly injuring ABCFFC

---

[16] *Schalamar Creek Mobile Homeowners' Ass'n v. Adler*, 855 Fed. App'x 546, 553 (11th Cir. May 7, 2021) ("[G]ermaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose.").

[17] *Fla. Auto. Dealers Ass'n, Inc. v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 50834, at *8 (N.D. Fla. Jan. 25, 2024) ("[T]he Eleventh Circuit has held that the third prong...was satisfied where an organization's members sought prospective injunctive relief.").

members.

"Summary [j]udgment is particularly appropriate in cases in which a district court is asked to review [an action] rendered by a federal administrative agency." *See Mahon v. USDA,* 485 F.3d 1247 (11th Cir. 2007). The Supreme Court has recently held that agencies are not entitled to previous *Chevron* deference: "In an agency case as in any other... there is a best reading" of an applicable statute —"'the reading the court would have reached' if no agency were involved." *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024). The Court has further held that agency actions must be set aside where the agency fails to adequately consider and address commenters' concerns. *See Ohio v. EPA*, 144 S. Ct. 2040, 2055-56 (2024); *see also Sierra Club v. USACE*, 2022 U.S. Dist. LEXIS 158322, at *32-33 (M.D. Fla. Sept. 1, 2022).

### III.    ARGUMENT ON THE MERITS

#### A.    The EO, PLA Rule, and OMB Memo Exceed the Authority of the Executive Branch Under FPASA

The EO, PLA Rule and OMB Memo are impermissible *ultra vires* actions by the President that are being carried out by other executive officers, *i.e.*, the FAR Council and OMB. FPASA is designed "to provide the Federal Government with an economical and efficient system" for procurement activities. *See* 40 U.S.C. § 101; *Georgia v. Biden*, 46 F.4th 1283, 1298 (11th Cir. 2022). "[T]he President's authority should be based on a 'specific reference' [in] [FPASA]." *Georgia*, 46 F.4th at 1294, 1297-98, 1301 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 304 n.34 (1979)) (Plaintiffs likely to succeed on the merits of claim President exceeded authority under FPASA where "no

10

statutory provision" contemplated mandate).[18] Here, like in *Georgia*, Defendants have pointed to no "specific reference" in FPASA allowing Defendants' actions; instead, Defendants cite various general provisions regarding procurement. This Circuit has expressly held "[a]n executive order cannot rest merely on the 'policy objectives of [a statute].'" *Georgia*, 46 F.4th at 1298.

Analysis under the major questions doctrine further reveals the President, FAR Council, and OMB lacked authority to issue the EO, PLA Rule, and OMB Memo, as the PLA Rule and EO assert issues of "economic and political significance," and therefore require "clear congressional authorization." *See West Virginia v. EPA*, 142 S. Ct. 2587, 2595 (2022).[19] Major questions appear where, as here, government action impacts contracts and solicitations "across broad procurement categories" in an unprecedented way. *See Georgia*, 46 F.4th at 1295-96.

In their Opposition to Plaintiffs' Motion for Preliminary Injunction, Defendants contended the Eleventh Circuit's *Georgia* decision is somehow not controlling because Judge Edmondson concurred only in the result. (Opp'n to PI Mot. 8). But the *Georgia* decision is plainly controlling here. Judge Edmondson's concurrence stated that he "easily believe[d] plaintiffs ha[d] a reasonable chance to succeed on the merits;" and the sole issue on the merits before the appeals court was whether FPASA authorized the

---

[18] *See also Florida v. Nelson*, 576 F. Supp. 3d 1017, 1038 (M.D. Fla. 2021) ("FPASA confers no 'blank check for the President to fill in at his will' and requires power to 'be exercised consistently with the structure and purposes' of FPASA.").

[19] *See also Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485 (2021); *FDA v. Brown & Williamson* (2000); *Georgia*, 46 F.4th at 1295-96 (applying major case doctrine to Presidential actions restricting government contractor rights under FPASA); *Louisiana v. Biden*, 55 F.4th 1017 (5th Cir. 2022) (same).

President's action. Judges Edmondson and Grant joined to affirm the district court's injunction to that same effect. Thus, the Eleventh Circuit's decision constitutes binding precedent. *See Georgia*, 46 F.4th at 1289, 1308.

Further contrary to Defendants' claim (Opp' to PI Mot. 8), Judge Grant's opinion is not "inconsistent" with FPASA precedent. Judge Grant relied on *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), and based her interpretation, in part, on *Chrysler's* requirement that presidential authority under FPASA must "be based on a 'specific reference' within [FPASA]." *See Georgia*, 46 F.4th at 1294 (quoting *Chrysler*, 441 U.S. at 304 n.34). Defendants did not address *Chrysler*, much less distinguish the case. *See also Chamber of Commerce v. Reich*, 74 F.3d 1322, 1324 (D.C. Cir. 1996) (vacating executive order restricting government contractors' use of strike replacements); *ABC SE Tex.*, 2016 WL 8188655, at *15 (E.D. TX 2016) (enjoining Executive Order and FAR Council rule unlawfully imposing labor reporting requirements on federal government contractors).[20]

Defendants have asserted FPASA provides presidents with broad authority but their argument relies primarily on distinguishable cases from outside this Circuit. (Opp'n to PI Mot. 4-5). For example, Defendants cited *AFL-CIO v. Kahn*, 618 F.2d 784, 789 (D.C. Cir. 1979) (en banc) (Opp' to PI Mot. 4), where the D.C. Circuit held the President had the authority under FPASA to require contractors to comply with wage and price standards; but in *Kahn*, the D.C. Circuit "wish[ed] to emphasize" it found a "nexus between...wage and price standards and likely savings to the Government" and its

---

[20] Defendants have pointed only to general provisions discussing government contracting powers, but no specific language authorizing a PLA Mandate. (Opp'n to PI Mot. 9).

"decision today [did] not write a blank check for the President to fill at his will." *Id.* at 785, 793. In contrast, the PLA Mandate goes far beyond "wage and price" standards, unlike *Kahn*, and also unlike *Bradford v. DOL*, 2024 WL 1866432 (10th Cir. Apr. 30, 2024), on which Defendants also have relied (Opp'n to PI Mot. 4). In *Bradford*, the 10th Circuit merely upheld a $15 minimum wage for government contractors.[21] *Contra*, *Reich*, 74 F.3d at 1324; *ABC SE Tex.*, 2016 WL 8188655, at *15.[22]

The other cases Defendants have cited to say FPASA provides broad authority to presidents (Opp'n to PI Mot. 4 n.1-2) are similarly inapposite. *Mayes v. Biden*, 67 F.4th 921, 941 (9th Cir. 2023), *vacated as moot*, 89 F.4th 1186 (9th Cir. 2023), "has no legal force." *See Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015). In *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 914 (10th Cir. 2004), the party challenging an executive order "[did] not argue [the executive order went] beyond the scope of authority Congress delegated." *Id.* at 914 n.8. Defendants also cited *UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003) and *Chamber of Com. of U.S. v. Napolitano*, 648 F. Supp. 2d 726 (D. Md. 2009), two cases which relied heavily on *Kahn*. *See Chao*, 325 F.3d at 366-67; *Napolitano*, 648 F. Supp. 2d at 735-38. But this Circuit "disagree[s]" with the "purpose-based approach" of *Kahn* and its progeny, "detached as it is from [FPASA's] remaining text and structure." *See Georgia*, 46 F.4th at 1300.

---

[21] Defendants cite *Farkas v. Tex. Instrument, Inc.*, 375 F.2d 629, 632 n.1 (5th Cir. 1967). (Opp'n to PI Mot. 4 n.1). But as the 11th Circuit explained in *Georgia v. Biden*, 46 F.4th 1283 (11th Cir. 2022), "the former Fifth Circuit's decision is dicta." *See id.* at 1300 n.11. Defendants also cite *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940), but the court in *Georgia* distinguished that case. *See Georgia*, 46 F.4th at 1292-93.

[22] Defendants wrongly claimed the PLA Mandate applies a "longstanding understanding of FPASA" (Opp'n to PI Mot. 5), but as Plaintiffs have noted, no president has previously issued a PLA Mandate under the FPASA.

Ultimately, in issuing the PLA EO, the President has ignored the boundaries of FPASA and has exercised authority Congress explicitly refused to grant him. The President's EO has been enforced by his officers: the FAR Council[23] and OMB. *E.g.*, 88 Fed. Reg. 88708; (OMB Memo). Therefore, Plaintiffs have rightly challenged both the EO and the PLA Rule implementing it. *See Reich,* 74 F.3d at 1324.

### B.    The EO, PLA Rule, and OMB Memo Violate CICA

Congress passed CICA, 41 U.S.C. § 3301, to require federal agencies awarding contracts to "obtain full and open competition through ... competitive procedures." CICA bars federal agencies from using restrictive bid specifications to "effectively exclude" potential bidders or offerors.[24] "[I]mposing more criteria than necessary works against the... oft-repeated priority of achieving 'full and open competition' in the procurement process." *Georgia,* 46 F.4th at 1297.

Contrary to Defendants' claim that non-union contractors "may compete for contracts" under the PLA Rule, (AR, 88 Fed. Reg. 88709), non-union contractors cannot do so unless they give up their non-union status and accept costly burdens of unionization. (*E.g.*, Contractor Affidavits, SOF ¶ 9). The Rule's preamble concedes "union contractors...are more likely to work on PLA-covered projects." (AR, 88 Fed. Reg. 88713). And the OMB Memo acknowledges "many PLAs require contractors to use the union's hiring hall for referrals" and further concedes PLAs could create "unintended barriers to

---

[23] The FAR Council's rulemaking authority is prescribed within the confines of the OFPP Act and FPASA, which establish the limited rulemaking power within which the FAR Council must operate.  No delegation of authority to issue the presently challenged Rule can be presumed by the agency. *Georgia*, 46 F.4th at 1297-1301.

[24] *Competition in Federal Contracting: Legal Overview*, Congressional Research Service, p. 19, Jan 21, 2015.

entry." (*See* OMB Memo).

The existence of potential exemptions to the PLA Mandate compels no different result. As noted above, it is undisputed and a matter of public record that dozens of covered projects are being solicited and/or awarded without any exemption, even in areas (such as Jacksonville) where few if any union contractors are available to perform the work. (Brubeck 2d Aff. ¶ 6; Hensel Phelps Aff. ¶ 5; American-Electrical Aff. ¶ 5; M.C. Dean Aff. ¶ 3; Robins Aff. ¶ 3).[25] Further, the OMB Memo undermines the exemption process by stating: "[a] likely reduction in the number of potential offerors is not, by itself, sufficient to except a contract from coverage" and "two [or three] qualified offers is sufficient to provide adequate price competition…." (OMB Mem. at 6-7). In other words, exemptions will not apply *even where the PLA mandate prevents agencies from achieving "full and open competition" consistent with the CICA. See* 41 U.S.C. § 3301. This case is like *Georgia*, where the Eleventh Circuit found the President exceeded his authority after his order "impos[ed] more criteria than necessary" on contractors, contrary to the CICA. *See Georgia*, 46 F.4th at 1294.

Defendants have relied on *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1293 (Fed. Cir. 2020) to contend agencies can anticipate only certain entities can meet the needs of a solicitation.[26] (Opp'n to PI Mot. 13). But *Oracle* is inapposite. The PLA Mandate

---

[25] The PLA Rule estimated that as many as 50 percent of all projects would be exempt from PLA requirements. This false estimate cannot be squared with the undisputed fact that no projects have been exempted under the Rule as applied.

[26] Defendants contend commenters submitted research showing no statistically significant difference in bids between PLA and non-PLA projects (Opp'n to PI Mot. 13) but Defendants cited only one such study, relating to only one type of construction in only one state. *See* 88 Fed. Reg. 88709. Numerous contrary studies were cited in ABC's Comments opposing the PLA Rule, ignored by Defendants. (ABC Comments at 22-23)).

here has nothing to do with agency "minimum needs," which were being fully served without any need for PLAs 99 percent of the time in the decade prior to the new Rule. (SOF ¶ 2).  This case is much more like *NGS v. United States*, 923 F.3d 977 (Fed. Cir. 2019), where an agency's solicitation did not provide for full and open competition when a solicitation requirement "effectively exclude[d] offerors" and was "not based on some capability or experience requirement." *Id*. at 986; *see also Georgia*, 46 F.4th at 1294 (mandate found to violate full and open competition). Accordingly, the PLA Mandate violates CICA and must be vacated.

### C.    The PLA Rule and OMB Memo Violate the APA and OFPP

The APA, 5 U.S.C. § 706(2)(A), (D) directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found. . .   arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law," and "found to be...without observance of procedure required by law." An agency "must...provide good reasons" for changing positions. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 41–43 (1983); *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020). An agency's action is arbitrary and capricious where it fails to consider important aspects of the problem, offers explanations counter to evidence, and relies on factors it should not have considered. *State Farm*, 463 U.S. at 41-43; *Regents of the Univ. of Cal.*, 140 S. Ct. at 1913; *see also FCC v. Fox TV Stations, Inc*., 556 U.S. 502, 515 (2009). The agency must also consider costs and reliance interests for regulated parties *Encino Motorcars v. Navarro*, 136 S. Ct. 2117, 2125-26 (2016); *Brackeen v. Haaland*, 994 F.3d 249 (5th Cir. 2021) (*en banc*). Defendants did none of the foregoing things and thereby plainly violated the APA.

Defendants contend the APA does not apply because the President is not an "agency." (Opp'n to PI Mot. 13-14). But various courts have held the APA remains available when agency action relates to a presidential directive.[27] Indeed, the APA applies to agency action stemming from executive orders where "there is 'law to apply.'" *See City of Carmel-by-the-Sea v. DOT*, 123 F.3d 1142 (9th Cir. 1997). Here, of course, FPASA and CICA regulate government procurement; accordingly, APA review remains available.

Defendants have failed to give an adequate explanation (other than political favoritism) for imposing a PLA Mandate. Defendants have instead offered explanations for the PLA Mandate that run counter to the evidence, claiming without support that a PLA Mandate will "promote economy and efficiency in federal procurement." (AR, 88 Fed. Reg. 88711). To the contrary, PLAs discourage bidding from the employers of 89 percent of the construction industry, *reducing* economy and efficiency, facts which the PLA Rule ignored. (*See* ABC Comments at 21-24). In response to Comments that Defendants did not provide data on costs and benefits of the PLA rule, Defendants conceded they relied only on the President's "judgment." (AR, 88 Fed. Reg. 88711). Finally, as noted above, Defendants failed to explain why the PLA mandate was needed in light of the undisputed

---

[27] Defendants cite *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 835 (S.D. Tex. 2022), *aff'd*, 63 F.4th 366 (5th Cir.) (en banc), but that case is not good law, as it was vacated. Defendants also cite *Tulare Cnty. v. Bush*, 185 F. Supp. 2d 18, 28-29 (D.D.C. 2001) for the assertion arbitrary and capricious review is unavailable when an agency carries out presidential directives, (Opp'n to PI 14), but other courts disagree. *E.g.*, *Sierra Club v. Clinton*, 689 F. Supp. 2d 1147, 1156 (D. Minn. 2010); *Indigenous Envt'l Network v. Dep't of State*, 2017 U.S. LEXIS 193546, at *10-23 (D. Montana Nov. 22, 2017); *Protect Our Cmtys. Found. v. Chu*, 2014 U.S. Dist. LEXIS 42410, at *12-18 (S.D. Cal. Mar 27, 2014); *ABC SE Tex.*, 2016 WL 8188655, *12 (examining whether FAR Council action was arbitrary and capricious under the APA); *see also Reich*, 74 F.3d at 1324.

17

fact that the government's procurement officials had rejected any need for PLAs on 99 percent of large federal construction projects built in the previous 14 years under President Obama's EO. (SOF ¶ 2; ABC Comments; Brubeck Affidavits).[28] Defendants thus failed to meaningfully consider important aspects of the problems with a PLA mandate, in direct violation of *State Farm*.[29]

Defendants also did not meaningfully consider the impact of the PLA Rule on non-union contractors, plainly violating the Supreme Court's recent holding in *Ohio v. EPA*, 144 S. Ct. 2040, 2055-56 (2024).[30] In response to numerous concerns expressed in the administrative record, Defendants merely stated parties could somehow negotiate for less objectionable PLA provisions. (*E.g.*, AR, 88 Fed. Reg. 88710, 88713-88716). Defendants further contend "there is no data to suggest...bad-faith bargaining by unions." (AR, 88 Fed. Reg. 88712). But Defendants again miss the point. The PLA Mandate on its face grants unwarranted leverage to unions: bidding contractors must reach agreement in short periods to bid or receive awards; the unions, even if acting in good faith, have no corresponding incentive to reach agreement on any but their own terms. The PLA Rule

---

[28] Plaintiffs are not required to show that no covered projects will <u>ever</u> be found to be exempt from the PLA mandate. It is enough that the Defendants have increased the imposition of PLAs from one percent of covered projects up to 100 percent or any number approaching that magnitude, without any meaningful explanation or justification for this action, as required by *Ohio v. EPA, State Farm*, and *Encino Motorcars*.

[29] Defendants failed to meaningfully engage with concerns about delays and costs from PLAs (*see* ABC Comments at 21-22,), noting only "there is no conclusive evidence to support that specifically requiring a PLA will be the *sole* reason for additional delays or litigation." (88 Fed. Reg. 88172) (emphasis added).

[30] Defendants contend Plaintiffs have not pointed to data showing the government did not consider their comments. (Opp'n 14). Defendants miss the point of Plaintiffs' concerns. As explained in the Comments ABC submitted (which Defendants were required to consider and address), a PLA Mandate makes it much more difficult for non-union contractors to compete in the first place. (ABC Comments at 7, 12).

and OMB Memo failed to address at all the practical realities of negotiating PLAs as explained in ABC's comments.

Defendants rely heavily on their supposed exemptions to the PLA Mandate, but as explained above, the exemptions do not salvage the Rule. They are phantoms: improperly narrow on their face, posing numerous arbitrary obstructions, and without any meaningful criteria for agencies to use in determining whether an exemption is appropriate. (AR, 88 Fed. Reg. 88712); *see also East Bay Sanctuary Covenant v. Biden*, 2023 U.S. Dist. LEXIS 128360, at *38, 42-43 (N.D. Cal. July 25, 2023) (rule arbitrary and capricious where plaintiffs argued government was relying on rule's exceptions to justify it).

Finally, OMB promulgated the OMB Memo without providing notice and opportunity for public comment, in violation of the plain language of the OFPP Act. *See Louisiana v. Biden*, 575 F. Supp. 3d 680, 694 (W.D. La. 2021) (OMB violated the APA when it issued binding guidance without following OFPP notice and comment requirements). Defendants have claimed, citing *Kentucky v. Biden*, 571 F. Supp. 3d 715, 731 (E.D. Ky. 2021), that the OMB Memo has no independent legal force and therefore no notice or comment was required. (Opp'n to PI Mot. 15). But in *Kentucky*, the nonbinding guidance document at issue simply helped agencies comply with an executive order. *See Kentucky*, 571 F. Supp. 3d at 731. In contrast, the OMB Memo here goes beyond the PLA Rule or EO to set new requirements of its; for example, OMB arbitrarily declares that "two...qualified offerors is sufficient to provide adequate price competition," instructions appearing nowhere in the EO or PLA Rule (or in CICA). (OMB Memo 2(b)(ii)). The OMB Memo further contains mandatory language, explaining how agencies "must" conduct market analysis and how they "must" require a PLA under certain circumstances.

(OMB Memo); *see also Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (explaining, in the analogous APA context, that "[c]ourts have looked for mandatory language to determine whether an agency's action binds it and accordingly gives rise to legal consequences"). Accordingly, the EO, PLA Rule, and OMB Memo – separately and together—violate the APA and OFPP.

**D.      The PLA Rule, EO, and OMB Memo Violate Plaintiffs' First Amendment Free Association Rights**

First Amendment protections apply to government contractors. The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests" such as "protected ... associations," and the government may not restrict First Amendment rights as "the price of maintaining eligibility to perform government contracts." *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *ABC SE Tex.*, 2016 WL 8188655, at *8; *White v. Sch. Bd. of Hillsborough County*, 2009 U.S. App. LEXIS 1532, at *7 (11th Cir. Jan. 27, 2009); *Martin v. Wrigley*, 540 F. Supp. 3d 1220, 1229 (N.D. Ga. 2021).

Union association is a type of protected expressive association under the First Amendment. *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463-66 (2018). "Just as '[t]he First Amendment clearly guarantees the right to join a union...it presupposes a freedom not to associate' with a union." *See Mulhall*, 618 F.3d at 1287. "[M]andatory associations are permissible only when they serve a 'compelling state interes[t]...that cannot be achieved through means significantly less restrictive of associational freedoms.'" *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 310 (2012).

Here, the challenged PLA Mandate infringes on Plaintiffs' freedom of association by requiring Plaintiffs' members to associate with unions to bid on and/or perform

contracts that the PLA Rule covers. (*See also* Haskell Aff. ¶ 8; Hensel Phelps Aff. ¶ 10; Cianbro Aff. ¶¶ 6-7; American-Electrical Aff. ¶ 9; M.C. Dean Aff. ¶ 8). Defendants' have offered no compelling government interest justifying such infringement on the rights of Plaintiffs' members. As discussed above, the PLA Rule does not serve the government's claimed interest in increased economy or efficiency. Further, the government has previously encouraged (not required) PLAs, and Defendants have not shown the previous approach was insufficient to meet any compelling government interest "that cannot be achieved through means significantly less restrictive of associational freedoms.'" *See Knox*, 567 U.S. at 310. [31]

Defendants have contended the PLA mandate involves non-expressive commercial decisions (Opp'n to PI Mot. 15-16), citing inapposite free speech cases *Arkansas Times LP v. Waldrip*, 37 F.4th 1386, 1394 (8th Cir. 2022) and *Rust v. Sullivan*, 500 U.S. 173 (1991). But Plaintiffs do not argue the PLA mandate restricts their free speech rights; Plaintiffs present only a free association challenge. The free association cases Defendants have cited—*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 70 (2006) and *Christian Labor Ass'n v. City of Duluth*, No. 21-227, 2023 WL 3996240, at *10 (D. Minn. June 14, 2023)—are no more persuasive. (Opp'n to PI Mot. 16). In *Rumsfeld*, the Supreme Court rejected a free association challenge relating to the presence of military recruiters on law school campuses. *See Rumsfeld*, 547 U.S. at 69. The relationship between a union and an employer under a PLA is far more intrusive,

---

[31] In addition, the PLA Rule requires Plaintiffs' members to compel their employees to associate with unions as a condition of award of construction work, forcing them to aid and abet the infringement of employee rights under the Constitution.

requiring mutual agreement to various employment terms (*see* SOF ¶ 4).[32] In sum, the PLA Mandate violates Plaintiffs' free association rights under the First Amendment.

### E.    The PLA Rule, EO, and OMB Memo Violate Section 8(d) of the NLRA.

Congress has long prohibited the federal government from requiring employers to enter into any labor agreement or specific term thereof in Section 8(d) of the NLRA. *See H.K. Porter v. NLRB*, 397 U.S. 99, 102-109 (1970) (holding the federal government's National Labor Relations Board ("NLRB") does not have the power to compel employers to agree to any substantive contractual provision of a collective bargaining agreement). That is exactly what the PLA Rule unlawfully does as a condition of awarding federal contracts, thereby violating the NLRA.

Defendants have contended *Bldg. & Const. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./RI* ("*Boston Harbor*"), 507 U.S. 218 (1993) allows the government to require PLAs. (Opp'n to PI Mot. 16). But the Supreme Court only addressed the much narrower question whether federal labor law preempted state and local governments from choosing to impose PLAs on specific projects under their individual competitive bidding laws. *Id*.[33] The Court expressly declined to address the impact of Section 8(d) in that case, see 507 U.S. at 232, n.2; and *Boston Harbor* did not approve any across-the-board PLA mandates. *See* 507 U.S. at 227-29. Defendants have further cited *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985) for the assertion

---

[32] Thus, while the District of Minnesota in *Christian Labor* applied *Rumsfeld* (and other inapposite Eighth Circuit precedent) to reject a free association challenge to a provision in a project labor agreement, it was wrong to do so. *See Christian Labor*, 2023 WL 3996240, at *10.

[33] Since *Boston Harbor* was decided, roughly half the states – including Florida - have declared PLAs on government contracts to be in violation of competitive bidding laws. (*See* ABC Comments at 20).

the NLRA does not preempt minimum standards impacting contract terms (Opp'n to PI Mot. 16), but that case dealt with "state laws of general application," *see Massachusetts*, 471 U.S. at 753, nothing like the PLA Mandate.

### F.    The PLA Rule, EO, and the OMB Memo Fail to Comply with the RFA and SBA, in Violation of the APA

Under the SBA, "[i]t is the policy of the United States" that small businesses "have the maximum practicable opportunity to participate" in federal contracts, and federal agencies must set percentage goals for awarding contracts to small businesses. 15 U.S.C. § 637(d), 644(g). Most ABC members are small businesses (ABC Comments at 36); and a PLA mandate will drastically reduce the participation of small businesses, most of which are not unionized (SBA Comments at 2-3).

Relatedly, the RFA, as amended by SBREFA, 5 U.S.C. §§ 601-611, requires agencies issuing rules under the APA to publish a final regulatory flexibility analysis ("FRFA") assessing the negative impact of a rule on small businesses, considering less burdensome alternatives, and responding to "any comments filed by the Chief Counsel for Advocacy of the Small Business Administration in response to the proposed rule." 5 U.S.C. § 604(a). *See Southern Offshore Fishing Ass'n v. Daley*, 995 F. Supp. 1411, 1436-37 (M.D. Fla. 1998), and 55 F. Supp. 2d 1336 (M.D. Fla. 1999) (enjoining portion of regulations that did not comply with RFA).  The SBA Office of Advocacy noted multiple concerns with the PLA Rule (SBA Comments at 3), which the FAR Council failed to address, again violating the Supreme Court's recent holding in *Ohio v. EPA*. Defendants also improperly dismissed alternatives to the PLA Rule in comments, including ABC's, with minimal analysis. 88 Fed. Reg. 88716-88717; *see also Southern Offshore*, 55 F. Supp. 2d at 1340 (RFA analysis of a few pages inadequate). Accordingly, the PLA

Mandate must be set aside for failing to comply with the RFA or SBA, in violation of the APA.

**IV.    The 2024 Rule Should Be Set Aside on a Nationwide Basis, or, at a Minimum, Expedited Nationwide Injunctive Relief Must Be Provided for Plaintiffs' Members.**

Upon finding in favor of summary judgment, the appropriate remedy for the Court to apply is vacatur of  the PLA Rule under Section 706 of the APA. *See Ctr. for Biological Diversity v. Haaland*, 2023 U.S. Dist. LEXIS  222818, at *8-10 (S.D. Fla. Dec. 11, 2023) ("Because the agency's actions were unlawful, the ordinary APA remedy of vacatur is appropriate."). But if the Court declines to vacate the PLA Mandate universally, the Court must, at minimum, provide injunctive relief to Plaintiffs' local and national memberships. *See Warth v. Seldin*, 422 U.S. 490, 511, 515 (1975) (granting remedy of the court to association members); see also *Georgia,* 46 F.4th 1283, 1298.

As discussed previously, the Eleventh Circuit in *Georgia* granted injunctive relief to ABC's nationwide membership, without setting aside the federal mandate as to non-parties nationwide. *Id*. at 1298 (enjoining the government "from enforcing the mandate against...members of [ABC]"). ABC would consent to the same preliminary injunctive remedy in the present case but urgently requests that the Court issue such an order without waiting to rule on the cross-motions for summary judgment.

In the event of a final ruling on the merits holding the PLA Rule is unlawful, the Court should vacate the Rule for all purposes, pursuant to Section 706 of the APA. *See Ctr. for Biological Diversity*, 2023 U.S. Dist. LEXIS  222818, at *7 (citing 11th Circuit authority); *see also Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022)

("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation.").

## V.    CONCLUSION

Plaintiffs request that the Court grant this Motion.  In advance of the Court's ruling on the merits, Plaintiffs request that the Court grant Plaintiffs' pending motion for preliminary injunctive relief on an expedited basis.

Dated this 9th day of September, 2024.

Respectfully submitted,

*/s/Kimberly J. Doud*
Kimberly J. Doud
LITTLER MENDELSON, P.C.
111 N Orange Ave.,
Suite 1750
Orlando, FL 32801
407-393-2951
407-641-9263 (Fax)
kdoud@littler.com

Maurice Baskin (*pro hac vice* pending)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Ste. 400
Washington, D.C. 20006
(202) 772-2526
(202) 842-0011 (Fax)
mbaskin@littler.com

*ATTORNEYS FOR PLAINTIFFS*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 9th day of September, 2024, I electronically filed the foregoing with the Clerk of the Court by using the ECF system, which will send a notice electronically to Defendants' counsel of record.

*/s/Kimberly J. Doud*
Kimberly J. Doud

26