**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ASSOCIATED BUILDERS AND
CONTRACTORS FLORIDA FIRST
COAST CHAPTER, *et al.*,

    *Plaintiffs*,

        v.

WILLIAM F. CLARK, *et al.*,

    *Defendants*.

**Civil Action No. 3:24-cv-00318-WWB-MCR**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

As Defendants have explained, federal agencies' prerogative to require the use of PLAs in the government's own large-scale construction projects is undisputed. *See* Defs.' Mot. for Summ. J. 3, 14, 17, ECF No. 42 ("Defs.' MSJ"). These agreements have been used for many decades to facilitate the efficient completion of government construction projects, including the construction of NASA facilities at Cape Canaveral in the 1960s. *Id.* at 2. Large private corporations likewise use these agreements to facilitate efficient completion of large-scale construction projects. *Id.* at 3. Indeed, the private sector's use of PLAs outpaces the federal government's by more than one hundred-fold. *Id.* Union and non-union contractors alike can compete for contracts that require the use of a PLA. *Id.* at 5. Conversely, no contractor is required to bid on a public-sector solicitation if it objects to the solicitation's terms, just as it need not bid on a private-sector solicitation.

Since 1992, numerous Presidents have directed executive agencies with respect to the use of PLAs in the government's construction projects, much as the CEO of a private company may set policy with respect to the company's use of PLAs in its construction projects. The federal government's policy has ranged from prohibiting the use of PLAs (during the George H.W. Bush administration) to establishing a rebuttable presumption in favor of requiring them (during the Biden administration), and various policies in between, including permitting agencies to require the use of PLAs at their discretion (during the Clinton administration); encouraging them to do so (during the Obama and Trump administrations); and allowing agencies to award contracts to contractors and subcontractors who chose to use a PLA but prohibiting agencies from requiring such use as a condition of awarding the contract (during the George W. Bush administration). *See id.* at 3-4.

1

Each of these directives—including President Biden's PLA Order, at issue here, alongside the PLA Rule and OMB Memo—has rested on the President's Article II authority to superintend the Executive Branch's proprietary functions within the limits established by Congress and on the President's statutory authority under FPASA to "prescribe policies and directives that the President considers necessary to carry out th[e] subtitle" of the U.S. Code encompassing the federal government's procurement and property-management authorities. 40 U.S.C. § 121(a); *see id.* § 111. Such directives must be "consistent with th[at] subtitle," including its "purpose" of "provid[ing] the Federal Government with an economical and efficient system" for functions including contracting. *Id.* §§ 101(1), 121(a).

Plaintiffs may disagree with President Biden's exercise of that authority as a policy matter, but they fail to establish that the PLA Order, PLA Rule, or OMB Memo is unlawful, for the reasons explained in Defendants' prior briefs. Seven brief points warrant further emphasis in response to Plaintiffs' opposition brief:

*First,* Plaintiffs appear to fault Defendants for not providing a "statement of undisputed material facts." Pls.' Opp'n to Defs.' Mot. for Summ. J. 2 n.2, ECF No. 43 ("Pls.' MSJ Opp."). But this Court is not determining whether there are disputes of material fact in this case. Rather, "[w]hen a party seeks review of agency action under the APA, the Rule 56 standard does not apply, since the district judge sits as an appellate tribunal considering the entire case on review as a question of law." *McClash v. Fla. Dep't of Transp.*, 619 F. Supp. 3d 1167, 1185 (M.D. Fla. 2022). Defendants therefore did not need to provide such a statement, nor do they need to respond to Plaintiffs' statement.

2

*Second,* Plaintiffs continue to argue mistakenly that Judge Grant's lone opinion in *Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022), constitutes binding Eleventh Circuit precedent. They attempt to distinguish *Robertson v. Riverstone Communities*, LLC, 849 F. App'x 795, 801 n.4 (11th Cir. 2021), *see* Defs.' MSJ 15, by claiming that Judge Edmondson did not "specifically state that he concurred only in the result." Pls' MSJ Opp. 6. To the contrary, Judge Edmondson styled his separate opinion as a "concurrence with Judge Grant *in the result*" and stated that he "concur[red] *in the result Judge Grant reache[d]* for th[at] interlocutory appeal." *Georgia*, 46 F.4th at 1308 (Edmondson, J., concurring in the result) (emphasis added).

*Third,* Plaintiffs still have not explained why, in their view, the PLA Order exceeds the President's Article II authority to superintend the proprietary decisions of the Executive Branch, which independently justifies the PLA Order and was not addressed in *Georgia*. *See* Defs.' MSJ 11, 14; Defs.' Opp'n to Pls.' Mot. for Summ. J. 7-8, ECF No. 44 ("Defs.' MSJ Opp."). Plaintiffs address the President's constitutional authority only in a footnote, attempting to distinguish *Building & Construction Trades Department v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002), by arguing that it "dealt only with whether the President could choose *not* to permit imposition of a PLA mandate." Pls.' MSJ Opp. at 9 n.10. To the contrary, the holding that President Bush's PLA order was valid because "the President's supervisory authority over the Executive Branch" includes authority to direct agencies "how to proceed in administering federally funded projects . . . '[t]o the extent permitted by law'" applies with equal force here. *Allbaugh*, 295 F.3d at 33.

*Fourth,* Plaintiffs assert that because "FPASA and CICA regulate government procurement . . . APA review remains available" for the PLA Rule and the OMB Memo.

3

Pls.' MSJ Opp. 12. Of course, whether or not challenged final agency actions comply with these statutes is appropriate for judicial review. But "arbitrary and capricious review" pursuant to 5 U.S.C. § 706(2)(A) is not available because the agencies that implemented the executive order did not have discretion to deviate from the policy the President set forth in the executive order. Plaintiffs' standard would "subject[] almost every executive order to APA review," which is not the law. *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 835 (S.D. Tex. 2022), *aff'd*, 63 F.4th 366 (5th Cir.) (en banc), *vacated on other grounds*, 144 S. Ct. 480 (2023).

*Fifth,* Plaintiffs' opposition underscores why the OMB Memo is not reviewable. They assert that the OMB Memo "has remained in place unchanged since the government issued it" such that it represents final agency action. Pls.' MSJ Opp. 12. That misstates the law. What makes the OMB Memo "interlocutory" is not that it is subject to change, but that it is not a final decision about any government contracting matter. Rather, it provides advice to help agencies develop contract solicitations, which can be reviewed through the bid protest process. Plaintiffs assert that the OMB Memo "goes beyond the PLA Rule or EO to set new requirements," giving as an example the allegedly "arbitrar[y]" rule that "two . . . qualified offerors is sufficient to provide adequate price competition." *Id.* But that example only proves Defendants' point: it is the FAR, and not the OMB Memo, that sets the standard for what determines adequate price competition. OMB Memo at 7 (citing FAR 15.403-1(c)(1)). Because Plaintiffs cannot identify any legally binding obligation that flows from the OMB Memo, as opposed to the PLA Rule or the FAR, the OMB Memo is unreviewable.

4

*Sixth*, Plaintiffs' brief also misstates the law of arbitrary and capricious review. The "exceedingly deferential" nature of APA review is in no way limited to the specific facts of cases Defendants cited in their brief. *Florida v. Dep't of Health & Human Servs.*, 19 F.4th 1271, 1290 (11th Cir. 2021). The standard is also not affected by the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), which did not concern arbitrary and capricious review under § 706(2)(A). Even if Defendants had been at liberty to weigh the administrative record and reach a different policy judgment than the one the President reached in the executive order, Defendants' consideration of the issues would have easily met this standard of rationality.

*Seventh*, Plaintiffs continue to misunderstand section 8(d) of the National Labor Relations Act. Defendants did not argue that section 8(d) did not apply because the government did not "sign" a PLA. Pls.' MSJ Opp. 17. Defendants argued section 8(d) does not apply because the government is acting as a contractor when it solicits bids for large scale construction contracts, not a regulator. It is therefore the "employer" under 29 U.S.C. § 158(d) and entitled to set the terms under which work is performed on its behalf. It is not influencing negotiations between an employer and a union that does not otherwise concern the federal government. The role of the National Labor Relations Board in mediating a dispute between a union and a private employer (at issue in *H.K. Porter v. NLRB*, 397 U.S. 99 (1970)) is not analogous to the role Defendants play in setting the rules by which the federal government procures construction services for itself.

For these reasons, and the reasons stated in Defendants' prior briefs, the Court should grant Defendants' motion for summary judgment.

Dated: October 23, 2024   Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LESLEY FARBY
*Assistant Branch Director, Federal Programs Branch*

*/s/ Michael J. Gerardi*
MICHAEL J. GERARDI (D.C. Bar No. 1017949)
*Senior Trial Counsel*
TAISA M. GOODNATURE (N.Y. Bar No. 5859137)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Tel: (202) 616-0680
michael.j.gerardi@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of October, 2024, I electronically filed the foregoing with the Clerk of the Court by using the ECF system, which will send a notice electronically to all registered users of ECF.

/s/Michael J. Gerardi

Michael J. Gerardi
Senior Trial Counsel