**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA FIRST COAST CHAPTER, AND ASSOCIATED BUILDERS AND CONTRACTORS, <br><br>    Plaintiffs <br> v. <br><br> WILLIAM F. CLARK, DIRECTOR, OFFICE OF GOVERNMENT-WIDE ACQUISITION POLICY, OFFICE OF ACQUISITION POLICY, OFFICE OF GOVERNMENT-WIDE POLICY, GENERAL SERVICES ADMINISTRATION, *et al.* <br><br>    Defendants. | **Case No. 24-cv-318-WWB-MCR** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR EXPEDITED SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION**

Plaintiffs Associated Builders and Contractors Florida First Coast Chapter ("ABCFFC") and Associated Builders and Contractors ("ABC" or "ABC National") (collectively "Plaintiffs") submit this reply in support of their motion for summary judgment against the Federal Acquisition Regulatory ("FAR") Council Defendants ("Defendants").

## I.       ARGUMENT

### A.    The EO, PLA Rule, and OMB Memo Exceed the Authority of the Executive Branch Under FPASA

At the outset, Defendants wrongly seek to shift the burden to Plaintiffs to disprove the President's finding that the unprecedented PLA mandate is "necessary." (Def. Opp. 3-4). To the contrary, "FPASA confers no 'blank check for the President to fill in at his will.'" *See Fla. v. Nelson*, 576 F. Supp. 3d 1017, 1038 (M.D. Fla. 2021). And Plaintiffs

1

have explained why the PLA mandate is unnecessary and inconsistent with FPASA. (Pl. Opp. 4-5). The Defendants have not shown that any labor issues have caused problems in federal construction contracts. (*See* AR 532-33). And Defendants have failed to acknowledge or address the voluminous research and "real world" examples in the opposing comments showing that the PLA mandate will in fact *injure* economy and efficiency in federal contracting. Defendants have conceded the Rule could cause delays and entry barriers. (*see* AR0012, AR0014, OMB Memo at 5).

Plaintiffs have already addressed Defendants' false claim that the Eleventh Circuit's decision in *Georgia v. Biden*, 46 F.4th 1283, 1298 (11th Cir. 2022), was nonprecedential and incompatible with FPASA. (Pl. Opp. 4, 6-7; refuting Def. Mot. 4). Plaintiffs have also explained why the PLA mandate goes beyond the directives in *AFL-CIO v. Kahn*, 618 F.2d 784 (D.C. Cir. 1979), and *Bradford v. DOL*, 101 F.4th 707 (10th Cir. 2024). Those cases involved only wage and price standards for contractors; not a requirement to engage with unions. (*See* Pl. Mot. 12-13). Defendants wrongly persist in contending *Mayes v. Biden*, 67 F.4th 921 (9th Cir. 2023), somehow remains persuasive, citing *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210 (11th Cir. 2009). But *Friends* holds: "Parts of decisions that are vacated and have not been reinstated 'have no legal effect whatever. They are void.'" *Id.* at 1218. [1]

Defendants claim Plaintiffs accepted earlier PLA directives. (Def. Opp 4.) But the distinction is obvious: previous directives merely encouraged (or prohibited) PLAs on

---

[1] Defendants again cite *City of Albuquerque v. U.S. Dep't of the Interior*, 379 F.3d 901 (10th Cir. 2004); *UAW-Labor Employment & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003); and *Chamber of Commerce v. Napolitano*, 648 F. Supp. 2d 726 (D. Md. 2009), which Plaintiffs have already addressed. (Def. Opp. 5-6; Pl. Mot. 13)

2

federal contracts; while the current PLA Rule is the first time any President has <u>mandated</u> PLAs. In any event, Plaintiffs did not "accept" any earlier order as lawful in paragraph 105 of their Complaint. (Def. Opp. 6) (ECF No. 1 ¶ 105). Defendants try but fail to distinguish *Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996), and *ABC v. Rung*, 2016 U.S. Dist. LEXIS 155232 (E.D. Oct. 24, 2016). (Def. Opp. 6-7). *Reich* recognized limits on presidential power under FPASA. *See Reich*, 74 F.3d at 1332. And *Rung* noted challenged requirements on contractors (which the court invalidated) could be "nowhere found in" FPASA.[2] *See* 2016 U.S. Dist. LEXIS 155232 at *18-19. The same is true here.

Defendants argue Article II of the Constitution justifies the PLA mandate regardless of FPASA. (Def. Opp 7-8). But Article II alone does not permit the PLA mandate. *See Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 172 n.13 (4th Cir. 1981) (Article II does not allow executive orders "in the absence of any delegation of lawmaking power"). Defendants cite *Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002), but there, the court found a president had authority under Article II to issue an executive order <u>prohibiting</u> PLAs on federal projects, not mandating them. *See id.* at 30, 33. *See City of San Francisco v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018) (finding *Allbaugh* distinguishable where executive order "commands action").

### B. The EO, PLA Rule, and OMB Memo Violate CICA

Defendants claim *NGS v. United States*, 923 F.3d 977 (Fed. Cir. 2019), does not help Plaintiffs because restrictions on competition there made it impossible for bidders to win the award and were not tailored to agency needs, whereas here, non-union

---

[2] Defendants further contend (Def. Opp. 7) Plaintiffs give too much weight to *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), and the major question doctrine does not apply, but they are wrong, for reasons Plaintiffs have already explained. (Pl. Opp. 7-9).

contractors can supposedly still compete, the President believes PLAs are necessary, and contractors can file bid protests.[3] (Def. Opp. 8). But *NGS* remains instructive. *Commonwealth v. Biden*, 571 F. Supp. 3d 715 (E.D. Ky. 2021), relied on *NGS* in concluding the vaccine mandate for federal contractors likely violated CICA, even though the government presumably believed vaccines were necessary and contractors could still compete if they followed the mandate. *See id.* at 719, 727. The PLA mandate violates CICA, and Plaintiffs need not await the outcome of individual bid protests to challenge the illegality of the PLA Rule as a whole.

### C. The PLA Rule and OMB Memo Violate the APA and OFPP

Defendants contend the PLA mandate is unreviewable under the APA because Defendants lacked discretion to depart from the EO. (Def. Opp. 10 & n.6). But the cases Defendants cite for this assertion do not so hold; and Defendants incorrectly claim the PLA mandate passes arbitrary and capricious review. (Def. Opp. 11; Pl. Opp. 13-16). Again, contrary to the government's claims, undisputed evidence establishes that PLAs will increase costs and delays while reducing competition, and already have done so. (Pl. Opp. 14). The government relies on outdated data to claim PLAs will not reduce bids (AR0014) and even the government does not claim PLAs will reduce costs or dispute PLAs will cause delay. (AR0011-14). Defendants' *post hoc* rationalizations cannot substitute for the FAR Council's failure to address the voluminous evidence of harmful effects caused by the PLA Rule, which compels finding an APA violation under the Supreme Court's holding in *Ohio v. EPA*, 144 S. Ct. 2040, 2055-56 (2024).

---

[3] That Plaintiffs could bring bid protests (and some have done so), does not foreclose Plaintiffs from challenging the PLA mandate here. *Biden* found a likely CICA violation without need for bid protests. *See Biden*, 571 F. Supp. 3d at 727.

Defendants assert that the FAR Council was compelled to adopt the President's view of PLAs under the EO (Def. Opp. 11), but that claim simply proves Defendants approached the PLA mandate with "too closed a mind," contrary to the APA. *See Ctr. for Biological Diversity v. Everson*, 435 F. Supp. 3d 69, 87 (D.D.C. 2020). Elsewhere, Defendants ignore reality by asserting the PLA mandate does not give unions too much leverage because if unions are too difficult, "no one will be able to bid." (Def. Opp. 12). To the contrary, the PLA Rule ensures unions and their favored, unionized contractors will win the work because their primary non-union competitors will be at a huge competitive disadvantage.

Defendants fruitlessly challenge Plaintiffs' arguments regarding the failure of the PLA Rule to allow for meaningful exceptions; but the FAR Council has offered no serious response to undisputed fact that **no exemptions from the PLA mandate have been allowed since the PLA Rule went into effect**. (Pl. Opp. 20; Pl. Mot. 19).

### D. The PLA Rule, EO, and OMB Memo Violate Plaintiffs' First Amendment Free Association Rights

Defendants contend the PLA mandate does not require employees to join a union or pay dues (Def. Mot. 14), but union dues and fees are common with PLAs. (Pl. Mot. 20; AR0519, AR0522). Defendants wrongly rely on *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ("*FAIR*") (Def. Opp. 14), which Plaintiffs have addressed, noting the intrusion on expressive association rights is greater here than in *FAIR*. (Pl. Mot. 21). Defendants claim intrusiveness is not relevant, but *FAIR* rejected a First Amendment challenge because the infringement on associational rights was "limited." (Def. Mot. 15). Negotiating a PLA with a union for a multi-million-dollar contract

is not a "limited" interaction (*id.*); construction projects can span years (AR0240).[4] Accordingly, the PLA mandate violates Plaintiffs' First Amendment rights.

### E. The PLA Rule, EO, and OMB Memo Violate Section 8(d) of the NLRA

Defendants argue Plaintiffs are wrong to rely on Section 8(d) of the NLRA and *H.K. Porter v. NLRB*, 397 U.S. 99 (1970), because the PLA mandate "regulates the conduct of agencies acting as employers negotiating their own contracts." (Def. Opp. 16). But the PLA Rule prohibits agencies from being parties to PLAs (AR0025) so they and the FAR Council are <u>not</u> acting like employers, they are regulators imposing the PLA mandate on multiple projects without exception to date. (AR0017). Accordingly, the PLA mandate violates Section 8(d) of the NLRA, as Plaintiffs have correctly argued. (Pl. Opp. 17-20).

### F. The PLA Rule, EO, and the OMB Memo Fail to Comply with the RFA and SBA, in Violation of the APA

Defendants contend the PLA mandate complies with the RFA and SBA because Defendants said they would work with the Small Business Administration and otherwise lacked the ability to change the President's policy.[5] But the RFA is meaningless if the government can circumvent it through executive orders. (Pl. Opp. 20). The PLA mandate violates the RFA and SBA.

### II. The 2024 Rule Should Be Set Aside on a Nationwide Basis, or, at a Minimum, Expedited Nationwide Injunctive Relief Must Be Provided for Plaintiffs' Members.[6]

---

[4] Defendants insist *Arkansas Times LP v. Waldrip*, 37 F.4th 1368 (8th Cir. 2022); *Rust v. Sullivan*, 500 U.S. 173 (1991); and *Christian Labor Ass'n v. City of Duluth*, No. 21-227, 2023 WL 3996240 (D. Minn. June 14, 2023) are relevant, but Plaintiffs have already addressed these cases. (Pl. Opp. 17; Pl. Mot. 20).
[5] Defendants cite *U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88 (D.C. Cir. 2001), which Plaintiffs have already addressed. (Pl. Opp. 19-20).
[6] Defendants claim Plaintiffs' preliminary injunction motion is moot. (Def. Opp. 17). But until the Court issues a final decision, Plaintiffs' motion is not moot.

Defendants claim without support that the Court should not order *vacatur*. (Def. Opp. 18). But as Defendants acknowledge, the Eleventh Circuit recognizes *vacatur* as the ordinary remedy in an APA case. (*Id.*). Defendants argue the Court need not apply *vacatur* because the *vacatur* would not "result in a meaningful change to the challenged policy in this case." (*Id.* at 18-19). But Defendants' reasoning is flawed: to comply with the APA, significant changes to the PLA Rule will be necessary, and the current unlawful mandate must be set aside. Defendants contend any remedy should respond to Plaintiffs' injury and Plaintiffs have not challenged specific contract solicitations or awards. (Def. Opp. 19). But Defendants miss the point: this case is not a bid protest; Plaintiffs challenge the legality of the PLA mandate itself and have demonstrated significant and undisputed injuries to the many contractors who Plaintiffs represent, both locally and nationally. Indeed, Defendants acknowledge the Court "could order Defendants to 'disregard' the PLA Rule as to Plaintiffs." (Def. Opp. 19). Finally, Defendants contend the Court should avoid disruptions to procurement. (Def. Opp. 19-20). But setting aside the PLA Rule would not disrupt procurement; the *PLA Rule itself is disrupting procurement,* as evidenced by Plaintiffs' undisputed member affidavits and the numerous bid protests already filed. (AR0014). Accordingly, the Court should vacate the PLA Rule in its entirety or at minimum provide injunctive relief for Plaintiffs' members.

## V.   CONCLUSION

Plaintiffs request that the Court grant Plaintiffs' Motion for Summary Judgment and/or Plaintiffs' Motion for Preliminary Injunction.

Dated this 23rd day of October, 2024.

                      Respectfully submitted,

                      */s/ Kimberly J. Doud*
                      Kimberly J. Doud
                      LITTLER MENDELSON, P.C.
                      111 N Orange Ave.,
                      Suite 1750
                      Orlando, FL 32801
                      407-393-2951
                      407-641-9263 (Fax)
                      kdoud@littler.com

                      Maurice Baskin (*pro hac vice* pending)
                      LITTLER MENDELSON, P.C.
                      815 Connecticut Ave., N.W.
                      Ste. 400
                      Washington, D.C. 20006
                      (202) 772-2526
                      (202) 842-0011 (Fax)
                      mbaskin@littler.com

                      *ATTORNEYS FOR PLAINTIFFS*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of October, 2024, I electronically filed the foregoing with the Clerk of the Court by using the ECF system, which will send a notice electronically to Defendants' counsel of record.

                      */s/ Kimberly J. Doud*
                      Kimberly J. Doud