IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ASSOCIATED BUILDERS AND
CONTRACTORS FLORIDA FIRST
COAST CHAPTER, *et al.*,

    *Plaintiffs*,

        v.

WILLIAM F. CLARK, *et al.*,

    *Defendants*.

**Civil Action No. 3:24-cv-00318-WWB-MCR**

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING**
***MVL USA, INC. v. UNITED STATES***

Pursuant to the Court's minute order of February 25, 2025, ECF No. 51, Defendants respectfully submit this supplemental brief regarding the order of the Court of Federal Claims ("CFC") in *MVL USA, Inc. v. United States*, 174 Fed. Cl. 437 (2025), and its relevance to Plaintiffs' Competition in Contracting Act ("CICA") claim in this case. *See* Compl., ECF No. 1, ¶¶ 87–90 (Count 2).

*MVL* is a consolidated bid protest involving numerous plaintiffs that challenged the "legal authority of federal agencies to mandate prospective contractors to enter project labor agreements [("PLAs")] with unions for consideration in federal construction projects exceeding $35 million." 174 Fed. Cl. at 441. The plaintiffs argued in their challenge, among other things, that PLA requirements in the contracts at issue in these protests violated CICA. *Id.* at 453–55. The CFC granted Plaintiffs' motion for judgment on the administrative record, resting its ruling on CICA grounds. *Id.* at 470. The CFC did not enter any injunctive relief; rather, it only decided the issue of the parties' likelihood of success on the merits, and directed further proceedings to determine an appropriate injunctive remedy. *Id.* at 473–74. The Government then cancelled four of the solicitations at issue and amended the other three to remove the challenged PLA requirements. In addition, the Department of Defense recently waived application of the PLA Rule in its contracting for large-scale construction projects,[1] and the General Services Administration granted a class exception from the Federal Acquisition Regulation ("FAR") for all land-based port-of-entry construction projects, citing one of the exemptions under

---

[1] Off. of the Under Secretary of Defense for Acquisition and Sustainment, Department of Defense, Memo. From John M. Tenaglia Re. "Class Deviation—Waiver of Project Labor Agreement Requirement," Feb. 7, 2025, https://www.acq.osd.mil/dpap/policy/policyvault/USA000250-25-DPCAP.pdf

1

the PLA Rule, § FAR 22.504(d)(1).[2]  On the basis of those developments, the government has now moved to dismiss the bid protests as moot, and has also opposed the plaintiffs' request for a permanent injunction.  *See* Defs.' Mot. to Dismiss & Resp. to Pls.' Mot for Perm. Inj. Relief, *MVL USA, Inc. v. United States*, No. 1:24-cv-01057, ECF No. 112 (Feb. 24, 2025).

The *MVL* court made a number of observations with respect to CICA and the operation of the PLA Rule in the particular contract solicitations that were before it.  First, to the extent agencies "deci[ded] to proceed with [a] PLA requirement as a mandate based solely on the President's policy—wholly disregarding the post-PLA market survey recommendation to remove the PLA entirely because a PLA would increase price and reduce competition"—the CFC concluded that such a decision was "arbitrary and capricious as it runs counter to any evidence presented to the agency."  *Id.* at 467.  Second, applying *National Government Services, Inc. v. United States* ("*NGS*"), 923 F.3d 977 (Fed. Cir. 2019), the CFC concluded that the PLA requirements in the contract solicitations before it violated CICA because, in its view, "the record indicates a PLA requirement has no bearing on whether plaintiffs can *perform* the contract at issue," noting in particular that "the actual building specifications did not change—the only change was the inclusion of the mandatory FAR PLA language."  *Id.* at 468.  Third, the CFC concluded that the exceptions to the PLA requirement found in the PLA rule had been "rendered functionally meaningless," based on the record before it, because none of the agencies sought "an exception regardless of the strength of the market survey data recommending

---

[2] Off. of Governmentwide Policy, Gen. Servs. Admin., Memo. From Jeffrey A. Koses Re. "Class Exception to Requiring a Project Labor Agreement for Land Ports of Entry," Feb. 12, 2025, https://www.gsa.gov/system/files/SPE-2025-05.pdf

2

against the inclusion of a PLA." *Id.* at 469–70. In sum, "both in the function of the mandatory rule itself and in the apparent policy to deny exceptions even when the agency itself commissions data indicating an exception should be made," the Court concluded that the PLA requirements were not lawfully imposed on the contracts before it. *Id.* at 470.

The CFC centered its analysis on *NGS*, the same decision Plaintiffs rely upon here. The policy at issue in *NGS* capped the percentage of workload that the relevant agency could award to any particular contractor. *Id.* at 980. The Federal Circuit held that the policy precluded full and open competition because the cap "effectively ma[de] it impossible for certain offerors to win an award" if they would exceed the cap, and that this exclusion was impermissible because the cap was unrelated to an offeror's "capability or experience" and because it was not "tailored to meet [the agency's] needs for a particular procurement." *Id.* at 983-86.

The CFC erred in how it applied *NGS* to the PLA Rule. The PLA Rule explained that PLAs advance economy and efficiency in large-scale government construction projects by "increasing coordination amongst multiple employers and trade unions, preventing costly labor disputes, promoting labor management stability, improving reliable access to skilled labor . . . and bolstering contractors' compliance with employment law." AR0754 (PLA Rule). Those functions are not irrelevant to "contract performance" or to the "substance" of the contract, as the CFC held, simply because a contract could be done without a PLA, or because the "specifications" of a project may not otherwise change if a PLA is required. *MVL*, 174 Fed. Cl. at 468–69. Such requirements are routinely upheld; in *NGS*, the court favorably cited Comptroller General

decisions upholding requirements that offerors be a U.S. citizen where the solicitation implicated national security concerns, or have experience working on a building with a certain number of elevators. 923 F.3d at 985. Neither requirement is strictly necessary to complete the project, and neither requirement would otherwise change the project specifications. But neither violates CICA.

Plaintiffs' reading of *NGS* and CICA would give courts broad authority to rewrite the terms of solicitations based on their own sense of what requirements bear on the "substance" of the contract, or its "performance," and which do not. Rather, PLA requirements are much more similar to the types of requirements the *NGS* opinion discusses favorably than they are to the hard caps on contract awards to certain parties that the *NGS* court invalidated. Both union and non-union contractors can enter PLAs, and the requirement "is not necessarily objectionable simply because that requirement has the effect of excluding certain offerors who cannot satisfy that requirement." *NGS*, 923 F.3d at 985-86. This Court should not adopt *MVL*'s narrow reading of *NGS*.

Even if the *MVL* court had not erred in its application of the law, its ruling is bound to the records underlying the particular procurements at issue in that case. The CFC held that, as to the bid protests before it, the agencies had not sought an exemption despite the presence of evidence that might indicate an exemption should be made, including their own market survey data. In other words, its ruling concerned "the functional application" of the PLA Rule in the cases before it. *MVL*, 174 Fed. Cl. at 470. But this is a challenge to the PLA Rule on its face, not a specific procurement or even a group of such procurements. Administrative records underlying actual solicitations are not part of the record in this case, and the CFC's finding that "the functional application" of the PLA

4

Rule in those specific solicitations violated CICA does not permit vacatur of the PLA Rule or an injunction against its enforcement in any context. *Id.* The PLA Rule has built-in exceptions that allow agencies flexibility not to include a PLA under certain circumstances based on the information before them, and "in the absence of clear evidence to the contrary, courts presume that [public officials] have properly discharged their official duties." *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926). Indeed, the recent actions by both DoD and GSA concerning the PLA Rule demonstrate the "tailor[ing]" of the PLA Rule to "meet [agencies'] needs for a particular procurement." *NGS*, 923 F.3d at 986. So even if some *applications* of the PLA Rule may be found to violate CICA, the PLA Rule itself does not violate CICA on its face. Indeed, the PLA Rule contains an exception when requiring a PLA for a particular project would be inconsistent with a statute. FAR 22.504(d)(1)(iii). To the extent their members are injured by actual procurements where exceptions are not properly applied, Plaintiffs' recourse is through a bid protest, not an APA action.

For these reasons, the Court should grant Defendants' motion for summary judgment on Plaintiffs' CICA claim, as well as all of Plaintiffs' other claims.

Dated: March 4, 2025            Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

LESLEY FARBY
*Deputy Branch Director, Federal Programs Branch*

*/s/ Michael J. Gerardi*
MICHAEL J. GERARDI (D.C. Bar No. 1017949)
*Senior Trial Counsel*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005

5

Tel: (202) 616-0680
michael.j.gerardi@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of March, 2025, I electronically filed the foregoing with the Clerk of the Court by using the ECF system, which will send a notice electronically to all registered users of ECF.

/s/Michael J. Gerardi

Michael J. Gerardi
Senior Trial Counsel